No. 59,313

EDWARD E. LEEPER, *Appellant,* v. SCHROER, RICE, BRYAN & LYKINS, P.A., *et al., Appellees.*

(736 P.2d 882)

Opinion filed May 1, 1987.

*Robert E. Wonder,* of Leawood, argued the cause and was on the brief for appellant.

*Myron L. Listrom,* of Sloan, Listrom, Eisenbarth, Sloan & Glassman, of Topeka, argued the cause, and *Stanley R. Parker,* of the same firm, was on the brief for appellees Schroer, Rice, Bryan & Lykins, P.A., and Gene E. Schroer.

*Richard Harmon,* of Glenn, Cornish, Hanson & Karns, Chartered, of Topeka, argued the cause and was on the brief for appellee First State Bank and Trust Company.

The opinion of the court was delivered by

McFARLAND, J.: This is an action by Edward E. Leeper against an attorney, Gene E. Schroer, who represented him in a personal injury action, and said attorney's firm arising from the loss of a cashier's check. Also named as a defendant is the First State Bank & Trust Co., the bank issuing the check. The trial court held in favor of the defendants and Leeper appeals.

The background facts are essentially undisputed and may be summarized as follows. Leeper was seriously injured in a motorcycle-truck accident in November 1983. Schroer was retained by Leeper to represent him on his claim. The claim was ultimately settled in April 1984 for $77,767.60. Schroer received an insurance draft for the settlement proceeds made out to himself and Leeper. The draft was mailed to Leeper at his Garden City address with instructions to endorse the same and return it to Schroer, whereupon Schroer would send Leeper a check on the firm's trust account for Leeper's share of the settlement. The draft was endorsed by Leeper and mailed to Schroer. Before Schroer could make the disbursement, Leeper telephoned Schroer to advise he wanted his share ($50,100.20) in cash. Schroer advised Leeper that this was a large sum to be carried around in cash; that it was the first such request he had ever received; but that he would check with his bank about the possibility of doing it that way. The Bank (defendant First State Bank & Trust Company) advised Schroer that this would be difficult to arrange, but did not turn down the request. Schroer telephoned Leeper and advised him of the difficulty of a cash transaction and further advised that any cash disbursal by the

Bank over $10,000 would be reported by the Bank to the federal government. Leeper advised Schroer he did not want the matter to be so reported and agreed he would personally come to Topeka, receive less than $10,000 in cash, and take the rest in a cashier's check. The date for the trip to Topeka was later set for Friday, April 20, 1984.

Late on the afternoon of April 20, 1984, Leeper telephoned Schroer stating that he was still in Garden City and wanted the proceeds mailed to him. Schroer testified he believed Leeper indicated that he wanted a cashier's check rather than a trust account check as Leeper had been reluctant, all along, to receive a trust account check. Leeper believed a cashier's check would be easier to cash. Normally, Schroer would have used a trust account check to disburse funds to a client. On the following Monday (April 23, 1984), Schroer caused a cashier's check to be purchased from the defendant Bank, made payable to Leeper, for the full amount of Leeper's share of the proceeds. The check was mailed to Leeper at his current address by first-class mail. The check was not received by Leeper. Shortly after this time, Leeper's live-in girlfriend departed. The cashier's check has never been presented for payment. Additional facts will be stated as necessary for discussion of particular issues.

The first issue is whether the district court erred in holding that Schroer and his firm were not negligent in sending the cashier's check by ordinary first-class mail.

The applicable scope of review herein is clear. Where the trial court has made findings of fact and conclusions of law, the function of this court is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. *Friedman v. Alliance Ins. Co.*, 240 Kan. 229, Syl. ¶ 4, 729 P.2d 1160 (1986); *Holly Energy, Inc. v. Patrick*, 239 Kan. 528, Syl. ¶ 2, 722 P.2d 1073 (1986). Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. *Wooderson v. Ortho Pharmaceutical Corp.*, 235 Kan. 387, Syl. ¶ 2, 681 P.2d 1038, *cert. denied* 469 U.S. 965 (1984). Stated in another way, "substantial evidence" is such legal and relevant evidence as a reasonable person might

accept as being sufficient to support a conclusion. *Kansas Dept. of Health & Environment v. Banks,* 230 Kan. 169, 630 P.2d 1131 (1981).

Additionally, an appellate court must accept as true the evidence and all inferences to be drawn therefrom which support or tend to support the findings of the trial court, and must disregard any conflicting evidence or other inferences which might be drawn therefrom. *Koch Engineering Co. v. Faulconer,* 239 Kan. 101, 104, 716 P.2d 180 (1986); *American States Ins. Co. v. Ehrlich,* 237 Kan. 449, 452, 701 P.2d 676 (1985).

The trial court's findings of fact concerning the defendants Schroer and the Schroer law firm are as follows:

"24. Attorneys routinely and customarily disburse settlement proceeds to their clients by sending a trust account check by first class mail.

"25. Where a client has refused a trust account check, sending a cashier's check payable to the client by first class mail is a proper method of disbursing a client's funds and is within the standard of care required of attorneys."

The complained-of conclusion of law is:

"Based on the facts and circumstances presented in this case, it is the judgment of this Court that plaintiff has failed to prove any negligence by Gene Schroer; Schroer, Rice, Bryan and Lykins, P.A.; or the First State Bank and Trust Company; and that judgment should be entered against the plaintiff and in favor of all defendants, with costs of this action to be taxed to the plaintiff."

Plaintiff contends that the defendants Schroer and the Schroer law firm were negligent in sending the settlement proceeds in the form of a cashier's check to Leeper by first-class mail, neither insured, registered, nor certified. The only issue concerning defendants Schroer and the Schroer law firm was whether they were negligent in the manner in which they disbursed the settlement proceeds to the plaintiff. There was no claim of fraud, dishonesty or any other breach of a fiduciary duty.

Negligence is a question of fact. *Baker v. City of Garden City,* 240 Kan. 554, 557, 731 P.2d 278 (1987); *Schmeck v. City of Shawnee,* 232 Kan. 11, Syl. ¶ 5, 651 P.2d 585 (1982); *DeGraeve v. Southwestern Bell Tel. Co.,* 9 Kan. App. 2d 753, Syl. ¶ 3, 687 P.2d 1380, *rev. denied* 236 Kan. 875 (1984). Negligence exists where there is a duty owed by one person to another and a breach of that duty occurs. *Durflinger v. Artiles,* 234 Kan. 484, 488, 673 P.2d 86 (1983). In a negligence case, the plaintiff must

establish a duty of reasonable care owed by the defendant to the plaintiff, a breach of that duty, damage to plaintiff, and a causal connection between the duty breached and the damage sustained. *Baker v. City of Garden City*, 240 Kan. 554, Syl. ¶ 4.

Although this is a negligence action between a client and his attorney arising from the professional relationship, the claimed negligence lies in a ministerial act rather than the exercise of professional judgment. Therefore, the usual discussions of duties owed to clients by attorneys do not really fit the situation. The following illustrate the general pronouncements in the field of attorney negligence.

In 7A C.J.S., Attorney & Client § 255, pp. 460-62, it is stated:

"As a general rule, an attorney is liable in damages to his client for injury sustained by him as a proximate result of the attorney's negligence. The negligent performance of duties imposed on an attorney, or actionable legal malpractice, is compounded of the same basic elements as other kinds of negligence, and has been likened to, and is subject to the same rules as, other forms of professional malpractice. The requisite elements of a legal malpractice action, therefore, are the existence of an attorney-client relationship creating a duty of care upon the attorney, and the failure to perform, or breach of, the duty.

"Legal malpractice or negligence consists of failure of an attorney to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of tasks which they undertake, and what may be negligence on the part of an attorney in any particular case must be decided by the facts and circumstances of the situation under consideration. Consequently, the attorney is liable to a client for negligence when the attorney fails in the particular case to exercise a reasonable degree of care, skill, and diligence, and he will not be liable where he acts with a proper degree of attention, with reasonable care, and to the best of his skill and knowledge."

Likewise, 7 Am. Jur. 2d, Attorneys At Law § 199, p. 249 addresses the degree of reasonable care and skill demanded of an attorney:

"His duty to his client requires an attorney to exercise the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession similarly situated. He is not bound to exercise extraordinary diligence, but only a reasonable degree of care and skill, having reference to the character of the business he undertakes to do. Within this standard, he will be protected so long as he acts honestly and in good faith."

In *Bowman v. Doherty*, 235 Kan. 870, 686 P.2d 112 (1984), we said:

"An attorney is obligated to his client to use reasonable and ordinary care and

diligence in the handling of cases he undertakes, to use his best judgment, and to exercise that reasonable degree of learning, skill, and experience which is ordinarily possessed by other attorneys in his community." Syl. ¶ 5.

"The duty of an attorney to exercise reasonable and ordinary care and discretion remains the same for all attorneys, but what constitutes negligence in a particular situation is judged by the professional standards of the particular area of the law in which the practitioner is involved." Syl. ¶ 6.

"Expert testimony is generally required and may be used to prove the standard of care by which the professional actions of the attorney are measured and whether the attorney deviated from the appropriate standard." Syl. ¶ 7.

"There is a common knowledge exception to the rule requiring expert testimony in malpractice cases. Expert testimony is not necessary where the breach of duty on the part of the attorney, or his failure to use due care, is so clear or obvious that the trier of fact may find a deviation from the appropriate standard of the legal profession from its common knowledge." Syl. ¶ 8.

Under the concepts of ordinary negligence or professional negligence (legal malpractice), the question really comes down to whether there is substantial competent evidence supporting the trial court's findings and conclusions relative to lack of negligence proved by plaintiff. We must conclude the record supports the trial court's determination herein. It was established that banks routinely send cashier's checks by ordinary first-class mail. Schroer and William Hergenreter, a Topeka attorney independent of defendant attorneys, both testified that the sending of a cashier's check by ordinary first-class mail, under the circumstances herein, was not a breach of ordinary care. Leeper presented no evidence, other than his own opinion, that Schroer's acts constituted negligence. We conclude this issue is without merit.

The second issue is whether the district court erred in refusing to award plaintiff prejudgment interest against the Bank.

Before discussing the issue, some additional facts need to be stated. Prior to the filing of the action herein, Leeper never contacted the defendant Bank for reissuance of the cashier's check. Schroer and Leeper had discussed the problem of the missing cashier's check and Schroer had discussed the problem with the Bank. The Bank had liability on the original cashier's check for five years against the holder in due course and required the posting of a bond if reissuance was to be done. Leeper was aware of the bond requirement and declined to pursue this avenue of resolution. Without the posting of a bond, Leeper

could only wait out the five-year statute of limitations in order to obtain payment.

In its conclusions of law, after finding no negligence on the part of the Bank, the district court stated:

"Based on the facts and circumstances presented in this case and upon the principles of law and equity, plaintiff is not entitled to recover pre-judgment interest.

"Regarding the question of what should be done pending the running of the statute of limitations on the outstanding cashier's check, due to the bank's outstanding and continuing liability so long as the check remains unpresented, it is the conclusion of this court that an indemnification bond is proper. Because no negligence has been proven against any of the defendants and because the plaintiff, being the sole person to benefit, has been aware for many months that he could receive the proceeds of the check upon presentation of an indemnification bond, plaintiff is hereby required to post such a bond in the amount of $60,000.00; said figure being arrived at by considering the doubtfulness that the check will ever be presented, the amount of outstanding liability, and any possible legal fees associated therewith.

"The defendant First State Bank and Trust Company is hereby directed to segregate the proceeds of the cashier's check in the amount of $50,100.20 and place the same in an interest bearing account, to be retained as security by the bank until such time as the plaintiff obtains an indemnification bond or the statute of limitations runs on cashier's check number 23167 dated April 23, 1984.

"Upon the plaintiff obtaining an indemnification bond as set forth herein, or if no bond is obtained, upon the running of the statute of limitations applicable to the cashier's check, the bank is directed to remit to the plaintiff all funds held by it in said account, the same representing the face amount of the cashier's check plus all accrued interest from the date of this judgment."

Leeper appears to be contending he is entitled to prejudgment interest as a matter of right rather than through the exercise of judicial discretion; hence, he claims error rather than abuse of discretion. In support of his claim of error, Leeper relies heavily on *Santos v. First Nat'l State Bk. of N.J.*, 186 N.J. Super. 52, 451 A.2d 401 (1982), which also involved a missing cashier's check and a claim for prejudgment interest. The *Santos* case contains an interesting discussion on the nature of cashier's checks and the unique legal issues they present. However, *Santos* specifically states:

"[P]rejudgment interest is not due as of right but may be allowed on equitable principles." 186 N.J. Super. at 79-80.

Clearly, the allowance or disallowance of prejudgment interest herein was a matter of judicial discretion. We discussed the

standard of review, where abuse of discretion is claimed, in *Lone Star Industries, Inc. v. Secretary, Kansas Dept. of Transp.*, 234 Kan. 121, 671 P.2d 511 (1983), wherein we said:

"One who asserts the court has abused its discretion bears the burden of showing such abuse of discretion. *Hoover Equipment Co. v. Smith*, 198 Kan. 127, 134, 422 P.2d 914 (1967); *Skahan v. Powell*, 8 Kan. App. 2d 204, 208, 653 P.2d 1192 (1982); *Lemons v. St. John's Hospital of Salina*, 5 Kan. App. 2d 161, 613 P.2d 957, *rev. denied* 228 Kan. 807 (1980); *State v. Wright*, 4 Kan. App. 2d 196, Syl. ¶ 5, 603 P.2d 1034 (1979), *rev. denied* 227 Kan. 928 (1980). Judicial discretion is abused when judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court then it cannot be said that the trial court abused its discretion. *Stayton v. Stayton*, 211 Kan. 560, 562, 506 P.2d 1172 (1973); *Cook v. Cook*, 231 Kan. 391, 394, 646 P.2d 464 (1982)." 234 Kan. at 131.

See *Hagedorn v. Stormont-Vail Regional Med. Center*, 238 Kan. 691, Syl. ¶¶ 1-2, 715 P.2d 2 (1986).

There is no claim by Leeper that the Bank acted improperly in the issuance of the check or was, in any way, responsible for its loss. Leeper could have obtained his money prior to litigation by posting a bond. Under these circumstances, in conjunction with the totality of the circumstances herein, we find no breach of discretion by the trial court in refusing to allow prejudgment interest.

In Leeper's docketing statement and in his statement of the issues contained in his brief, this issue relates solely to the refusal of the district court to allow prejudgment interest. In discussing this limited issue, Leeper expands it to include an allegation that the district court's requirement of a bond was improper. It is highly questionable whether this piggybacked issue is properly before us. Nevertheless, the requirement of the bond is a matter of judicial discretion and, given the Bank's five-year potential liability on the check against a holder in due course and the totality of the circumstances herein, we cannot find any abuse of discretion relative to the bond requirement.

The judgment is affirmed.