No. 65,445

LANSING-DELAWARE WATER DISTRICT, *Appellee,* v. OAK LANE PARK, INC., a Kansas Corporation, Dissolved on March 15, 1988, and FLORENCE ROSE A. BLACK, EARL D. BLACK, MARY AGNES PARKS, JOANNE HIATT, and DONALD PARKS, *Appellants.*

(808 P.2d 1369)

Opinion filed April 12, 1991.

*Robert D. Beall,* of Davis, Beall, McGuire & Thompson, Chartered, of Leavenworth, argued the cause and was on the brief for appellants.

*Jeffrey L. Baxter,* of Chapman, Waters & Baxter, of Leavenworth, argued the cause, and *Douglas D. Sutherland,* of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This is an interlocutory appeal pursuant to Supreme Court Rule 4.01 (1990 Kan. Ct. R. Annot. 19) from an order entered by the district court disqualifying the law firm of Davis, Beall, McGuire & Thompson, Chartered, (Davis-Beall) from representing defendants in this matter. The disqualification occurred pursuant to Rule 1.10 (1990 Kan. Ct. R. Annot. 236) of the Model Rules of Professional Conduct, Supreme Court Rule 226 (1990 Kan. Ct. R. Annot. 210).

In August 1988, Gary A. Nelson began working as an associate attorney with the law firm of Chapman & Waters. Generally, every attorney at Chapman & Waters had access to and discussed all files of the firm. In July 1989, Douglas D. Sutherland joined Chapman & Waters as an associate. Sutherland and Nelson met while in law school and became friends. They socialized both before and after Sutherland joined Chapman & Waters.

The pending litigation was filed on August 15, 1989. Jeffrey L. Baxter, of Chapman & Waters, is lead counsel for plaintiff, while Sutherland is assisting. Nelson resigned his position at Chapman & Waters on February 18, 1990, and began working at Davis-Beall on February 24, 1990. Davis-Beall did not contact Chapman & Waters before offering Nelson the position. On March 12, 1990, Douglas G. Waters, a partner with Chapman & Waters, in a letter addressed to four members of the Davis-Beall firm, asked Davis-Beall to withdraw from this and three other cases because Nelson's employment created a real or potential conflict of interest. A letter dated March 21, 1990, from John F. Thompson of Davis-Beall informed Chapman & Waters that Davis-Beall would not withdraw from this or any other cases involving both firms. In his letter, Thompson identified six additional cases that involved both firms and informed Chapman & Waters that Nelson had been instructed to have no involvement with those cases and their files. Thompson stated that the files of all these cases "have been removed from the general filing area and Mr. Nelson has not had, nor will he have, access to such files." According to Thompson, Davis-Beall was confident that imposing the "Chinese Wall" "will result in no confidential information making its way to the members of the law firm of

[Davis-Beall] via Mr. Nelson [and was] sufficient to protect all of the interests of all parties."

On April 11, 1990, plaintiff filed a motion to disqualify the Davis-Beall firm because Nelson had acquired material and confidential information regarding this case while at Chapman & Waters. The district court held an evidentiary hearing on April 27, 1990, receiving only the testimony of Nelson, who testified that he did not recall providing any legal services for plaintiff while employed at Chapman & Waters. The only contact he recalled involving the case was a discussion with Sutherland about the mechanical aspects of how water could flow and a review of a map showing the area of Leavenworth County affected by the alleged water diversion where the defendants' trailer park was located. He admitted that, while at Chapman & Waters, cases were discussed by various members of the firm. He also indicated he was aware his wife, who is a public accountant, had reviewed and summarized aspects of the case for Chapman & Waters. Based upon this evidence, the district court denied plaintiff's motion to disqualify. The court found that Nelson recalled only one discussion about the case involving review of a map and general aspects of the mechanics of water flow, that he had not gained confidential information through his wife, and that he had not acquired information protected by MRPC 1.6 (1990 Kan. Ct. R. Annot. 225) and MRPC 1.9(b) (1990 Kan. Ct. R. Annot. 235).

For reasons not clear in the record, Sutherland did not testify at the evidentiary hearing on April 27, 1990, but was deposed on the same day, with attorneys from both law firms questioning him. His deposition was submitted to the district court with plaintiff's motion for reconsideration, filed on April 27, 1990.

In his deposition, Sutherland testified that, during the six months that they worked together at the firm, he and Nelson had several specific conversations about this case, discussing it in detail at least five times. Sutherland recalled that they discussed damages calculations, burdens of proof, theories of conversion, and other theories. They reviewed several documents, including a diagram or map which depicted water flow in defendants' trailer park. Sutherland also recalled discussing with Nelson the possibility of employing Nelson's wife to provide damages calculations for this case. She did summarize information

regarding plaintiff's accounts, and Sutherland recalled discussing the results with Nelson. Sutherland indicated that, while they were in the firm together, he regularly discussed his cases with Nelson. He considered the conversations privileged and material. Sutherland testified that, in the mornings, when he came to the office, he would discuss problems in his cases with Nelson because "he had always good, solid ideas on how to resolve some of the problems and he was a good one to bounce ideas off of."

The district court reconsidered its ruling of April 27, 1990, and, in a journal entry dated May 11, 1990, and filed July 20, 1990, made the following findings:

"1. The Court weighed testimony of Gary Nelson, which the Court found to be truthful, the testimony of Douglas Sutherland, which the Court also found to be truthful, and determined that Gary Nelson had acquired information protected by Rules 1.6 and 1.9(b) of the Model Rules of Professional Conduct.

"2. The Court relied upon *Parker v. Volkswagenwerk*, 245 Kan. 580, 589 (1989), in finding that 'if it is determined that the attorney gained material and confidential information during the course of his or her previous employment, then both the attorney and the firm with whom he or she is presently associated are disqualified.'

"3. The Court is of the opinion that this Order involves a controlling question of law as to which there is substantial grounds for difference of opinion and that an immediate appeal from this Order may materially advance the ultimate termination of the litigation.

"4. It is also found that this Order affects the rights of the Defendants herein and will be a controlling question in the above-captioned matter."

Davis-Beall raises two issues in this appeal. First, it contends the district court erred in concluding that Nelson acquired confidential and material information that was either the same as or substantially related to the matters involved in this case.

The question which must be decided in this case is whether the law firm representing defendants must be disqualified because it employs an attorney who previously worked for the law firm that represents plaintiff. The Model Rules of Professional Conduct, as adopted by the House of Delegates of the American Bar Association, (ABA) were adopted, with some modification not relevant here, by the Kansas Supreme Court as general standards of conduct and practice required of the legal profession in Kansas as of March 1, 1988. See *Parker v. Volkswagenwerk Aktienge-*

*sellschaft*, 245 Kan. 580, 586, 781 P.2d 1099 (1989). The model rule applicable to this case is 1.10, which provides in part:

"(b) When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(b) that is material to the matter.

. . . .

"(d) A disqualification prescribed by this Rule may be waived by the affected client under the conditions stated in Rule 1.7." 1990 Kan. Ct. R. Annot. 236.

This court adopted the comments to the model rules to the extent that they are not inconsistent with the Kansas statutes or case law.

For MRPC 1.10 to apply, the attorney must acquire information protected by MRPC 1.6 and 1.9(b). MRPC 1.6 forbids an attorney from disclosing confidential information unless the client consents to the disclosure, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is necessary under MRPC 1.6(b). Pursuant to MRPC 1.6(b), information may be revealed to the extent the lawyer believes is reasonably necessary:

"(1) To prevent the client from committing a crime; or

"(2) to comply with requirements of law or orders of any tribunal; or

"(3) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client." 1990 Kan. Ct. R. Annot. 225.

MRPC 1.9 provides that a lawyer who has formerly represented a client in a matter shall not thereafter:

"(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or

"(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known." 1990 Kan. Ct. R. Annot. 235.

The Comment to MRPC 1.9 provides, in part:

"The scope of a 'matter' for purposes of Rule 1.9(a) may depend on the facts of a particular situation or transaction. The lawyer's involvement in a matter can also be a question of degree. When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests clearly is prohibited. On the other hand, a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a wholly distinct problem of that type even though the subsequent representation involves a position adverse to the prior client. Similar considerations can apply to the reassignment of military lawyers between defense and prosecution functions within the same military jurisdiction. The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question." 1990 Kan. Ct. R. Annot. 235.

In *Parker*, this court addressed a question similar to the one presented here. The suit, which was filed in May 1986, involved a personal injury claim for damages incurred in an automobile accident in 1984. Plaintiff Parker was represented by the law firm of Michaud, Hutton and Bradshaw (Michaud), while defendant Volkswagenwerk was represented by the law firm of McDonald, Tinker, Skaer, Quinn & Herrington (McDonald). 245 Kan. at 581. Randall Fisher began working as an attorney for McDonald in 1981. He became a director and shareholder in the firm in 1985. His future wife was hired as a legal assistant for McDonald in 1985; they were married in August 1986. 245 Kan. at 581.

Fisher left McDonald in September 1987 when he was appointed district judge. His wife continued to work with McDonald and was assigned to work on *Parker*. Fisher was defeated in an election and decided to return to private practice, receiving job offers from four firms. 245 Kan. at 581. He chose Michaud. Although asked, Volkswagenwerk refused to consent to continuing representation of Parker by Michaud following Fisher's association with that firm. Michaud segregated the files of any cases Fisher worked on while with McDonald but did not segregate the files in *Parker* because Fisher did not work directly on that case while employed at McDonald. Instead, the *Parker* files remained in Michaud's general filing area, although Fisher was instructed to stay out of the files and avoid any discussion of the case with other members of the firm. 245 Kan. at 582.

At a hearing on the motion to disqualify, Fisher testified that he attended weekly meetings at McDonald when various cases were discussed. He remembered when the *Parker* case came into the firm and to whom it was assigned, but he recalled only one discussion about the case, which was that it was a products liability case arising from a rear-end collision. 245 Kan. at 582-83. Fisher did not recall a specific conversation with one of the McDonald attorneys about the application of comparative fault in a crashworthiness test as that applied in *Parker*. 245 Kan. at 583. Fisher knew his wife was working on the case but testified that he did not know specifically what she was doing on it. She testified that she did not recall discussing the merits of the case with him or sharing information. 245 Kan. at 583.

McDonald produced evidence that Fisher worked 9.6 hours on *Parker*. Fisher recalled researching an issue on breach of warranty in another case and that the research was to be used in *Parker* but stated that he had gained no confidential information about *Parker* during this research. 245 Kan. at 583.

Following this hearing, the trial court found that the Michaud firm was disqualified by a conflict of interest resulting from employing Fisher, 245 Kan. at 583, but certified that the motion for disqualification involved a question of law presenting grounds for an immediate appeal. 245 Kan. at 583-84. This court first found that the appropriate means of appealing a disqualification of an attorney was by interlocutory appeal pursuant to Supreme Court Rule 4.01 rather than through a mandamus action. 245 Kan. at 584-86. This court then turned to the question of whether the trial court acted properly in disqualifying the Michaud firm. 245 Kan. at 586.

Traditionally, under the Code of Professional Responsibility, Supreme Court Rule 225 (1990 Kan. Ct. R. Annot. 164), an attorney's knowledge of his or her client's affairs was irrebuttably presumed to have been transmitted to other attorneys with the same law firm. But recently, courts allow the presumption to be rebutted by evidence that the attorney who was materially involved in the case did not share that information with his or her associates. Petitioners in *Parker* urged that the model rules established a new standard that required the court to determine if the attorney whose disqualification was sought actually acquired

material information in the case. 245 Kan. at 588. This court recognized a decision by the New Jersey Supreme Court, which concluded that the model rules did not contain a mandatory disqualification but, instead, required the court to determine whether the attorney represented one party as intended by MRPC 1.9 and, if so, whether the same attorney's subsequent representation of the other party in the same lawsuit would pose a substantial risk of disservice to the public interest or the interest of one of the clients. 245 Kan. at 588 (quoting *Dewey v. R.J. Reynolds Tobacco Co.*, 109 N.J. 201, 214-16, 536 A.2d 243 [1988]).

As pointed out by this court in *Parker*, the Comment to MRPC 1.10 indicates that "where lawyers move from one firm to the other, courts must balance the previous client's right of confidentiality, the right of having a reasonable choice of legal counsel, and the right of lawyers to form new associations and take on new clients when leaving a previous association." 245 Kan. at 588. Although the trial court conducted an evidentiary hearing to determine the question of disqualification, only Mr. and Mrs. Fisher testified. This court stated:

"Where a motion to disqualify based on MRPC 1.10(b) has been filed, the district court must have a full hearing to determine whether the attorney in question acquired material and confidential information during the course of his former employment. To support a disqualification order, the district court must make a specific factual finding that the attorney had knowledge of material and confidential information. The model rules define knowledge as actual knowledge of the fact in question, but state that knowledge can be inferred from the circumstances." 245 Kan. at 589.

The court concluded that the testimony presented in *Parker* was not sufficient to determine whether Fisher acquired material or confidential information about *Parker* while employed at McDonald. Therefore, this court remanded the case for a full hearing on the issue, stating:

"The district court must determine motions for disqualification on a case-by-case basis, remembering that the burden of proof lies with the attorney or firm who is sought to be disqualified. If it is determined that the attorney gained material and confidential information during the course of his or her previous employment, then both the attorney and the firm with whom he or she is presently associated are disqualified." 245 Kan. at 589.

Although the testimony here was not extensive, neither party argues that the evidence presented by Nelson's testimony at the hearing and Sutherland's testimony in deposition was inadequate for the court to resolve the question presented here. Plaintiff argues that the record contains substantial evidence to support the district court's finding that Nelson acquired information protected by MRPC 1.6 and 1.9(b). Defendants argue that *no* attorney-client privilege existed between Nelson and plaintiff that requires Nelson's, and hence the firm's, disqualification.

A court deciding a motion to disqualify counsel must balance several competing considerations, including the privacy of the attorney-client relationship, the prerogative of a party to choose counsel, and the hardships that disqualification imposes on the parties and the entire judicial process. Note, *Disqualification of Attorneys and Their Firms for Conflicts of Interest: A Lack of Consistency in Both Federal and State Courts*, 26 Washburn L.J. 493, 495 (1987). Prior to the adoption of the model rules, the courts turned to the ABA Code of Professional Responsibility for guidance in deciding issues regarding disqualification of attorneys for conflicts of interest. No specific provisions of the code dealt with this issue. Instead, the courts considered the broad principles of the canons, the policy-oriented ethical considerations, and the mandatory minimum ethical standards of the disciplinary rules in determining whether to grant a motion to disqualify counsel. The provisions of the code relied upon by the courts included Canon 4's requirement that the attorney "should preserve the confidences and secrets of a client" (1990 Kan. Ct. R. Annot. 182), Canon 5's broad admonition that a "lawyer should exercise independent professional judgment on behalf of a client" (1990 Kan. Ct. R. Annot. 184), and Canon 9's warning that a "lawyer should avoid even the appearance of impropriety" (1990 Kan. Ct. R. Annot. 204). 26 Washburn L.J. at 496-97.

Unlike the code, the model rules specifically address the problem of conflict of interest with a former client. Unlike the irrebuttable presumption created under the code, the model rules do not disqualify an attorney merely because of that attorney's association with another attorney who represents a client. Instead, the model rules require the person to have acquired confidential

and material information before that attorney is excluded. Once the lawyer is deemed to have acquired such information, however, the model rules bar representation by other members of the firm as well as by the "tainted" attorney. MRPC 1.10.

Davis-Beall appears to be urging this court to reinstate the district court's original findings announced at the end of the hearing the morning of April 27, 1990. At that time, the court stated that the firm should not be disqualified because Nelson did not obtain material and confidential information as required under MRPC 1.10.

In *Parker*, this court made clear that a trial court must conduct a full evidentiary hearing to decide whether the attorney in question acquired material and confidential information during the course of his former employment. 245 Kan. at 589. By considering Nelson's testimony at the hearing and Sutherland's deposition subsequent thereto, the district court complied with the requirement of conducting a full evidentiary hearing in determining the issue of disqualification.

*Parker* also requires the trial court to make a specific factual finding that the attorney had knowledge of material and confidential information. This requires actual knowledge of the fact in question, which can be inferred from the circumstances. 245 Kan. at 589. The district court here specifically found that Nelson had acquired information protected by MRPC 1.6 and 1.9(b). The court did not specify in the journal entry which evidence in particular caused it to reach that decision, but it did state that the decision was reached after weighing the testimony of both Nelson and Sutherland.

When the trial court has made findings of fact and conclusions of law, the function of an appellate court is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. *Leeper v. Schroer, Rice, Bryan & Lykins, P.A.*, 241 Kan. 241, 243, 736 P.2d 882 (1987). Substantial evidence is "evidence which possesses both relevance and substance, and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. Stated in another way, substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a

conclusion." *Kansas Dept. of Health & Environment v. Banks,* 230 Kan. 169, 172, 630 P.2d 1131 (1981); see *Williams Telecommunications Co. v. Gragg,* 242 Kan. 675, 676, 750 P.2d 398 (1988). An appellate court must accept as true the evidence and all inferences to be drawn therefrom which support or tend to support the findings of the trial court and must disregard any conflicting evidence or other inferences that might be drawn therefrom. *Leeper,* 241 Kan. at 244.

Although the district court here could have specified in more detail the basis for its decision, the evidence presented through Sutherland's deposition provides legal and relevant evidence that supports the district court's conclusion. The district court apparently believed that Nelson recalled only one discussion with Sutherland, but the court also accepted Sutherland's testimony that the discussion which Nelson recalled was much more detailed and involved an analysis of plaintiff's theories to be presented in the case. The court apparently also believed Sutherland's recollection of additional discussions which Sutherland admitted might be more readily remembered by him because of his more extensive involvement in the case.

We conclude that the findings by the district court are supported by substantial competent evidence and are sufficient to support disqualification of the Davis-Beall firm under MRPC 1.10.

The second issue raised by Davis-Beall is whether a screening device should be allowed to protect a private law firm from the taint caused by a newly employed attorney who has a conflict of interest based upon the attorney's prior nongovernmental employment. Davis-Beall urges this court to allow an exception to the strict provisions of strict disqualification under MRPC 1.10 if the law firm implements screening devices to prevent knowledge of the new attorney from tainting other members of the firm. This court rejected the availability of screening devices to cure the taint of the incoming attorney in *Parker.* 245 Kan. at 589. There, we noted that the model rules "reject, for lawyers practicing in the private sector at least, any thought that the 'taint' of the incoming lawyer can be cured by screening him or her out of the affected client's matter, or by erecting a 'Chinese Wall' or by imposing a 'cone of silence.' " 245 Kan. at 589 (citing 1 Hazard and Hodes, The Law of Lawyering: A Handbook on

the Model Rules of Professional Conduct, Rule 1.10, p. 191 [1988 Supp.]). Because *Parker* clearly came under MRPC 1.10(b), this court found screening devices were not provided for and were not appropriate unless all parties to the litigation agreed. 245 Kan. at 589. Although recognizing that this court rejected use of screening devices in *Parker*, Davis-Beall urges this court to reconsider and allow this common-law exception.

In drafting the model rules, the ABA considered adopting a provision that would not impute disqualification to private law firms hiring private attorneys if screening occurred. Proponents of this screening device pointed out that imposing a rule of vicarious disqualification arises from the assumption that attorneys will violate professional norms by disclosing former clients' confidences. Imposing vicarious disqualification penalizes clients and must make firms reluctant to hire attorneys collaterally from other firms. 1 Hazard and Hodes, pp. 192.1-92.2. Yet the screening solution was rejected by the ABA and most courts addressing the issue. A few courts have attempted to use it in cases where disqualification would work a great hardship, and two states have incorporated it into their rules. See 1 Hazard and Hodes, p. 192.2.

A client is entitled to have its confidences and secrets protected. The district court here found that Nelson had acquired information that was protected by MRPC 1.6 and 1.9(b). Because Nelson acquired this information, he was disqualified and his disqualification was imputed to Davis-Beall pursuant to MRPC 1.10(a). The model rule contains no provisions for use of screening devices in this situation. In fact, such a proposal was rejected at the time the model rules were adopted. Our decision in *Parker* is controlling on this issue, and we find no merit or reason to reconsider that decision.

The judgment of the district court is affirmed.