2002 OK CIV APP 113

## The PROSPECTIVE INVESTMENT AND TRADING COMPANY, LTD., Plaintiff/Appellant,

### Pezold, Caruso, Barker & Woltz, Appellant,

v.

## GBK CORPORATION, Kaiser–Francis Oil Company, Texas Southwest Gas Corporation, and Oneok, Inc., Defendants/Appellees.

### No. 96,604.

Court of Civil Appeals of Oklahoma, Division No. 1.

Oct. 25, 2002.

R.K.Pezold, Terry J. Barker, Joseph C. Woltz, Gene G. Boerner, III, Tulsa, OK, for Plaintiff/Appellants.

Frederic Dorwart, J. Michael Medina, Tulsa, OK, for Defendants/Appellees, GBK Corporation and Texas Southwest Gas Corporation.

Keith Seller, Tulsa, OK, for Defendant/Appellee, Kaiser–Francis Oil Company.

## OPINION

CARL B. JONES, Judge:

¶1 Appellants, The Prospective Investment and Trading Company, Ltd. (PITCO) and Pezold, Caruso, Barker & Woltz (Law Firm) appeal the district court's order disqualifying Law Firm from representing PITCO in a law suit against GBK Corporation (GBK), Kaiser–Francis Oil Company (Kai-

ser–Francis), Texas Southwest Gas Corporation (Texas Southwest), and ONEOK, Inc. (ONEOK) (collectively Appellees). For the reasons set forth hereinafter, we affirm the district court's order.

## FACTS

¶2 In 1988, Law Firm represented Samson Resources Company (Samson) in *Wolverine Exploration Company, Inc. et al. v. Texaco, Inc.*, Case No. CJ–88–5522 in the District Court of Tulsa County, and related litigation, including an arbitration proceeding (Wolverine Arbitration). In 1993, Kaiser–Francis became involved in the Wolverine Arbitration due to its acquisition of a non-operating working interest which included an interest in the proceeds of the Wolverine Arbitration. While all of Law Firm's prior contacts with Kaiser–Francis had been adversarial, Law Firm represented Kaiser–Francis as a nominal party in the Wolverine Arbitration from 1993–1998. The parties disagree as to the nature and extent of such representation. Law Firm disputes that an attorney-client relationship was established; it urges both Law Firm and Kaiser–Francis disclaimed the creation of the attorney-client relationship. Kaiser–Francis counters Law Firm entered into an attorney-client relationship with Kaiser–Francis, but admits Law Firm's representation of Kaiser–Francis was limited to the Wolverine Arbitration; Law Firm could represent Samson against Kaiser–Francis in other litigation; and Law Firm could represent other clients in claims adverse to Kaiser–Francis so long as such representation was not related to the Wolverine Arbitration.

¶3 In 1995, Texaco, the defendant in the Wolverine Arbitration, requested production of Kaiser–Francis's gas contract-related documents and files (Discovery Order). Kaiser–Francis requested and Law Firm agreed to review numerous boxes of Kaiser–Francis's documents to identify any documents that might be subject to a privilege claim. Members of Law Firm signified their review of Kaiser–Francis's files by placing a yellow paper in the file which stated: "THIS FILE HAS BEEN REVIEWED FOR PRIVILEGED AND CONFIDENTIAL MATERIAL BY COUNSEL FOR THE COMPANY IN THE *MATTER OF THE ARBITRATION BETWEEN WOLVERINE EXPLORATION COMPANY, et al. and TEXACO, INC.*"

¶4 Kaiser–Francis contends a settlement agreement covering certain oil and gas leases entered into between Kaiser–Francis and Oklahoma Natural Gas Co. (ONG), now known as ONEOK (Kaiser/ONEOK Settlement), was included in the documents reviewed by Law Firm. Kaiser–Francis urges the Kaiser/ONEOK Settlement was confidential and that such confidentiality was recognized by Law Firm when it represented Kaiser–Francis and negotiated, on Kaiser–Francis's behalf, a ratification and amendment of arbitration agreement which protected the confidentiality of Kaiser–Francis's files and documents. Law Firm counters there is no evidence the Kaiser/ONEOK Settlement was included in the boxes reviewed by Law Firm. Law Firm also contends the Kaiser/ONEOK Settlement was generally known by PITCO and other lawyers involved in litigation against Kaiser–Francis, and was ascertainable from public records; therefore, was not confidential.

¶5 On September 8, 2000, Law Firm filed a petition on behalf of PITCO alleging Appellees conspired to commit fraud and other torts by attempting to make it financially impossible for working interest owners, not affiliated with Appellees, to participate in new wells to be drilled by Appellees. The alleged conspiracy involved a gas contract, with a very restrictive pricing provision, originally entered into between ONG and Gulf Oil Corp. (Gulf Contract). PITCO alleged GBK wanted control of the Gulf Contract and its pricing and term provisions in order to benefit its subsidiaries, Texas Southwest and Kaiser–Francis, and that GBK entered into a conspiracy with ONEOK in order to achieve that goal. PITCO's petition also alleged Appellees failed to calculate payouts using the correct price.

¶6 Within two weeks of filing the PITCO petition, Law Firm served discovery requests on Kaiser–Francis seeking information regarding, *inter alia:* "The Settlement Agreement between Kaiser–Francis and ONEOK

concerning gas purchase contracts between Kaiser–Francis and ONEOK for gas produced in the State of Oklahoma. Upon information and belief, this Settlement Agreement was entered into sometime in the late 1980's or early 1990's."

¶ 7 On February 2, 2001, Appellees filed a motion for protective order pursuant to Rule 1.9(a) and (c), Oklahoma Rules of Professional Conduct, 5 O.S.1991 Ch.1, App.3–A. Appellees sought to disqualify Law Firm from representing PITCO in the instant lawsuit due to conflict of interest. After a full two day evidentiary hearing on the merits and substantial briefing by the parties, the district court entered a 17 page, well-reasoned and thoroughly researched order.

¶ 8 The district court addressed several competing considerations: balancing PITCO's interest in retaining counsel of its choice against Kaiser–Francis's concern for protection of its confidential information; protecting and upholding the attorney-client relationship and protecting an attorney who is representing a current client against a former client from being accused of wrongdoing; preventing the potential misuse of the disqualification motion as a litigation tactic; and protecting and preserving the attorney-client relationship and client confidences. Also, the district court's order made the following specific findings and conclusions of law: an attorney-client relationship existed between Law Firm and Kaiser–Francis during the pendency of the Wolverine Arbitration; the information required by the Discovery Order was produced by Kaiser–Francis and reviewed by Law Firm; at least some confidential information was included in the production; all aspects of discovery and production of documents were considered confidential by the parties and Law Firm; and the settlement of the dispute between ONEOK and Kaiser–Francis was "generally known;" however, the terms of the Kaiser/ONEOK Settlement, which are included in the allegations of PITCO's petition with specificity would not be "generally known" and could only come from confidential information encompassed by Rule 1.9. Based on the foregoing findings of fact and conclusions of law, the district court sustained Appellees'

motion for protective order and disqualified Law Firm pursuant to Rule 1.9(a) and (c).

¶ 9 Appellants filed a motion to reconsider which was overruled by the district court. The district court's order found Law Firm, which once represented Kaiser–Francis, is now alleging on behalf of PITCO that Kaiser–Francis is liable to PITCO and is using confidential information that was made available to and reviewed by Law Firm during its representation of Kaiser–Francis as the basis for PITCO's allegations.

¶ 10 For one of its allegations of error, Law Firm contends the district court erred when it disqualified Law Firm because its decision was based on the incorrect legal "appearance of impropriety" standard utilized prior to the current version of Rule 1.9. We do not find the district court relied on this standard as its sole basis to sustain the disqualification. And, since we affirm the trial court's decision on other grounds, we need not further address this issue.

¶ 11 Law Firm urges the evidence demonstrated that Law Firm never occupied an attorney-client relationship with Kaiser–Francis; Kaiser–Francis specifically waived any claim of conflict in future litigation against Kaiser–Francis brought by clients represented by Law Firm; the Wolverine Arbitration was not substantially related to the present case; the Kaiser/ONEOK Settlement was never involved in the prior Wolverine Arbitration; and the Kaiser/ONEOK Settlement is "generally known," therefore, excluded from the restrictions of Rule 1.9(c).

¶ 12 Kaiser–Francis counters the district court acted well within its discretion in disqualifying Law Firm because the compelling evidence showed Kaiser–Francis and Law Firm had an attorney-client relationship; the confidential documents viewed by Law Firm in the Wolverine Arbitration are substantially related to the current litigation; and the specific matters contained in the confidential Kaiser/ONEOK Settlement files were not generally known.

## STANDARD OF REVIEW

■ ¶ 13 In reviewing the district court's order of disqualification pursuant to Rule

1.9(a) and (c), we follow the requirements of *Piette v. Bradley & Leseberg*, 1996 OK 124, 930 P.2d 183. *Piette* requires the district court to hold an evidentiary hearing and if it determines a party's attorney should be disqualified, its disqualification order must include a specific factual finding that the attorney had knowledge of material and confidential information. *Piette* cites to *Lansing Delaware Water Dist. v. Oak Lane Park, Inc.*, 248 Kan. 563, 808 P.2d 1369 (1991), as authority. *Lansing–Delaware* provides the following standard of review:

> When the trial court has made findings of fact and conclusions of law, the function of an appellate court is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law.

■ *Id.* at 572, 808 P.2d at 1376. Additionally, we adhere to the rule that when a matter is tried to the district court, its determination of facts are accorded the same force as those made by a well-instructed jury. *K & H Well Service, Inc. v. Tcina, Inc.*, 2002 OK 62, ¶ 9, 51 P.3d 1219, 1223.

### DISQUALIFICATION PROCEEDINGS UNDER RULE 1.9(a) and (c)

¶ 14 The Oklahoma Supreme Court has observed "[t]he right to the assistance of legal counsel includes the right to be represented by a legal practitioner of one's own choosing." *Towne v. Hubbard*, 2000 OK 30, ¶ 14, 3 P.3d 154, 160. "Legal practitioners are not interchangeable commodities. Personal qualities and professional abilities differ from one attorney to another, making the choice of a legal practitioner critical both in terms of the quality of the attorney-client relationship and the type and skillfulness of the professional services to be rendered." *Id.* For these reasons, the Oklahoma Supreme Court has adopted a high barrier a party must surmount to secure the disqualification of his opponent's counsel. *Hayes v. Central States Orthopedic Specialists, Inc.*, 2002 OK 30, ¶ 9, 51 P.3d 562, 565.

¶ 15 In the instant action, the district court determined Law Firm's disqualification was warranted under Rule 1.9(a) and (c) because Law Firm represented Kaiser–Francis in the Wolverine Arbitration and obtained confidential information during such representation which Law Firm is attempting to use in the current litigation to Kaiser–Francis's disadvantage.

¶ 16 Rule 1.9(a) and (c) provide:

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

\* \* \*

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

> (1) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client, or when the information has been generally known; or

> (2) reveal information relating to the representation except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client.

### ATTORNEY–CLIENT RELATIONSHIP

■ ¶ 17 The first important consideration is whether the district court properly determined Law Firm entered into an attorney-client relationship with Kaiser–Francis. We find there was more than sufficient evidence that Law Firm entered into an attorney-client relationship with Kaiser–Francis. Law Firm reviewed boxes of documents for Kaiser–Francis during discovery; signed documents as Kaiser–Francis's counsel; and negotiated for and represented Kaiser–Francis's interest, along with the other plaintiffs' interests, in the Wolverine Arbitration.

■ ¶ 18 We next address whether Kaiser–Francis waived its right to seek disqualification of Law Firm based on conflicts. We reiterate that disqualification of an attorney from subsequent representation is for the

benefit of the former client; it protects the client's feeling of loyalty owed by the attorney; and it can be waived only by the client. *State ex rel. Oklahoma Bar Ass'n v. Berry*, 1998 OK 73, ¶ 4, 969 P.2d 975, 978.

¶ 19 Law Firm urges it orally disclaimed the attorney-client relationship, with Kaiser–Francis's consent, at the beginning of the representation and again in a letter dated June 25, 1996. Kaiser–Francis claims its response letter only confirmed its waiver of conflicts when Law Firm represents clients against Kaiser–Francis in matters unrelated to the Wolverine Arbitration; and since the instant litigation is related to the Wolverine Arbitration, there has been no waiver. The district court considered this evidence, but explained it was influenced by the one disinterested witness who testified that the real concern was only as to future representation of Samson in claims it might have against Kaiser–Francis. The district court found Kaiser–Francis agreed to waive any potential conflict of interest that might arise in the event Law Firm represented Samson against Kaiser–Francis; however, it was "loathe to find that there was no attorney-client relationship between" Law Firm and Kaiser–Francis absent a written agreement memorializing the limitations to the legal representation.

¶ 20 We agree with the district court's determination that Kaiser–Francis did not waive its right to seek disqualification of Law Firm for conflicts under Rule 1.9 in the instant litigation.

## SUBSTANTIALLY RELATED MATTER

■ ¶ 21 Law firm next contends the instant litigation is not "substantially related" to its prior representation of Kaiser–Francis. Law Firm urges the district court failed to make such a necessary finding. We thus review to determine if the district court addressed the "substantially related" requirement of Rule 1.9(a).

¶ 22 The district court's order discussed at length the different tests for determining whether a matter is "substantially related" to a former representation. The district court recognized some jurisdictions hold that once a "substantial relationship" is found to exist under Rule 1.9(a), there is a rebuttable presumption the lawyer received confidential information from the prior representation. The district court also discussed and declined to follow other jurisdictions which impose an irrebuttable presumption. The district court decided the instant matter would be "substantially related" to the Wolverine Arbitration if the court found *confidential information* was *provided* to Law Firm in the Wolverine Arbitration which Law Firm is now using or could use in the present action to Kaiser–Francis's disadvantage. This is in accord with the Oklahoma Supreme Court's decision in *Piette*.[1]

## CONFIDENTIAL INFORMATION

¶ 23 Our next inquiry is whether the district court reasonably inferred from the circumstances that Law Firm was *provided*

---

1. *Piette* has no recitation to facts. As a result, the Oklahoma Supreme Court did not identify whether it was interpreting Rule 1.9 (which generally prohibits a lawyer from bringing an action against a former client in the same or substantially related matter) or Rule 1.10 (which imputes disqualification to a law firm which employs an attorney who gained confidential information regarding a former client during the course of his previous employment.) We note *Piette* cites to both *Parker v.Volkswagenwerk Aktiengesellschaft*, 245 Kan. 580, 781 P.2d 1099 (1989) and *Lansing–Delaware* as authority for its holding. Both *Parker* and *Lansing–Delaware* dealt with the disqualification of counsel under Rules 1.9 *and* 1.10. We also note the Kansas Supreme Court in *Chrispens v. Coastal Refining & Marketing, Inc.*, 257 Kan. 745, 897 P.2d 104 (1995), differentiated that in disqualification proceedings brought only under Rule 1.9, the trial court should not hold a hearing, but should only determine whether the attorney formerly represented the client in previous matters and whether the matters are substantially related to the instant matter. Once a "substantial relationship" is found, "an irrebuttable presumption arises that the former client revealed facts requiring the attorney's disqualification." *Id.* at 114. *Chrispens* explains that to hold a hearing when disqualification is sought solely under Rule 1.9 would "frustrate the reason underlying the rule, which is to prevent disclosure of the confidential information the rule is designed to protect." *Id.* However, since our Supreme Court has not specifically identified the standards that must be met in a disqualification proceeding brought under Rule 1.9 only, we apply the standards set forth in *Piette*.

with *confidential information* concerning Kaiser–Francis to such extent that it has *knowledge* of the confidential information. The Rules of Professional Conduct define "knowledge" as "actual knowledge of the fact in question," but state that "knowledge may be inferred from the circumstances." The district court recognized "there is widely divergent evidence regarding what was or was not provided to the [Law] Firm for review in connection with the production of documents in response to the Discovery Order."[2] The district court found Kaiser–Francis did turn over information to the Law Firm to review and that the documents contained some confidential information. The district court found Kaiser–Francis would not have produced the documents absent an amendment to the arbitration agreement which provided for the enforcement of the confidentiality provisions of the arbitration agreement by ONEOK. The district court was further influenced by Law Firm's letter dated May 3, 1995 acknowledging that each settlement in the Wolverine Arbitration is "highly individualized" and will be kept confidential by the Law Firm even from other members of the plaintiffs' group.

¶ 24 The district court agreed, in part, with Law Firm's contention that aspects of the Kaiser/ONEOK Settlement were generally known and could be ascertained from public records, and hence did not qualify as confidential information under Rule 1.9.[3] However, the district court considered the allegations in PITCO's petition relating to the Kaiser/ONEOK Settlement to be so specific that such information could only come from confidential information which would be encompassed by Rule 1.9. The district court

also heralded the fact that Law Firm requested discovery of the Kaiser/ONEOK Settlement within two weeks of filing the PITCO petition as the "red flag" indicating Law Firm's knowledge of the confidential Kaiser/ONEOK Settlement.

¶ 25 Law Firm contends the district court's findings were based on "speculation" because the Kaiser/ONEOK Settlement was ·not a part of the hearing record; thus the district court did not compare the allegations of PITCO's petition with the Kaiser/ONEOK Settlement to determine if such allegations arose from Law Firm's prior review of the Kaiser/ONEOK Settlement. Law Firm urges that had the district court done so, it would have determined the allegations in the PITCO petition are contrary to the actual terms of the Kaiser/ONEOK Settlement. We agree with the district court's determination that it is not required to conduct an inquiry and identify the confidential information with the specificity desired by Law Firm; otherwise the confidential nature of the information would be compromised. *Chrispens,* 897 P.2d at 114.

¶ 26 Law Firm finally asserts Appellees' four month delay in requesting Law Firm's disqualification constituted a waiver of their right to seek disqualification. Law Firm urges the district court erred by not considering the motive behind such delay. We find the district court specifically addressed its obligation to insure that disqualification motions are not used for strategic purposes in its order. The district court did not err.

¶ 27 The evidence supports the district court's finding that Law Firm had knowledge of confidential information derived from its

**2.** Kaiser–Francis's evidence was that it produced settlement agreements and related documents, including the Kaiser/ONEOK Settlement, to Law Firm; Law Firm agreed to be responsible for managing Kaiser's production; Law Firm pledged not to disclose confidential information to any other claimant; members of Law Firm were heavily involved in the review and production of Kaiser–Francis's documents billing over 140 hours of legal time to such services; and Law Firm signified its review of Kaiser–Francis's ONG settlement related documents by inserting the yellow sheet in the box. In contrast, Law Firm produced evidence that its review of the Kaiser–Francis documents in the Wolverine Arbitration was cursory and limited to removing at-

torney-client privileged communications between Kaiser–Francis and its regular outside counsel; and that it did not review any information that it has now requested from Kaiser–Francis in the PITCO lawsuit.

**3.** *See* Comment to Rule 1.9 (Information acquired by the lawyer in the course of representing a client may not subsequently be used or revealed by the lawyer to the disadvantage of the client. However, the fact that a lawyer has once served a client does not preclude the lawyer from using generally known information about that client when later representing another client.)

prior representation of Kaiser–Francis and that such knowledge disqualifies Law Firm from representing PITCO in this substantially related action against Kaiser–Francis.

¶ 28 On September 17, 2002, Law Firm filed with this Court a "motion for summary reversal based on mootness." Law Firm's motion is denied.

¶ 29 AFFIRMED.

JOPLIN, V.C.J., and BUETTNER, J., concur.