**PACIFIC EMPLOYERS INSURANCE COMPANY, a California Corporation, Plaintiff,**

v.

**P.B. HOIDALE COMPANY, INC.; Employers Mutual Casualty Company; and Lightner–Kanaga Insurance, Inc., Defendants.**

Civ. A. No. 87–1384–B.

United States District Court, D. Kansas.

Feb. 10, 1992.

See also 782 F.Supp. 564.

Timothy J. Finnerty, McDonald, Tinker, Skaer, Quinn & Herrington, Wichita, Kan., for Pacific Employers Ins. Co.

Eldon L. Boisseau, Turner & Boisseau, Wichita, Kan., for Employers Mut. Cas. Co.

## MEMORANDUM AND ORDER

BELOT, District Judge.

This matter is before the court on the motion of defendant Employers Mutual Casualty Company ("Employers") for an order disqualifying the law firm of McDonald, Tinker, Skaer, Quinn & Herrington, P.A. ("McDonald, Tinker" or "Respondent") as counsel for plaintiff. (Doc. 278). The court held a hearing in this matter on January 16, 1992. Having heard the testimony, received exhibits, and reviewed the parties' memoranda in support of their respective positions, the court makes the following findings of fact and conclusions of law as required by *Fullmer v. Harper*, 517 F.2d 20, 21–22 (10th Cir.1975).

## BACKGROUND

The motion is based upon an alleged conflict of interest arising from the change of employment of attorney W. John Badke II. Defendant Employers is represented by the law firm of Turner and Boisseau—Badke's previous employer—and plaintiff is represented by McDonald, Tinker—Badke's present employer. Employers alleges that Badke "worked on this suit" while employed by Turner and Boisseau, and that his employment with McDonald, Tinker disqualifies Respondent from further representation of plaintiff.

Employers' motion is based upon Rule 1.10(b) of the Model Rules of Professional Conduct, which addresses conflicts of interest arising when an attorney changes employment from one law firm to another:

> When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(b) that is material to the matter.

---

**1.** The Model Rules of Professional Conduct, as adopted by the Kansas Supreme Court, govern the conduct of attorneys in this Court. *See* D.Kan. Rule 407(a); Kansas Supreme Court

Rule 1.10.[1] In turn, Rule 1.6 prohibits the disclosure of "information relating to representation of a client," and Rule 1.9(b) prohibits the use of such information to a client's disadvantage. In *Parker v. Volkswagen Aktiengesellschaft*, 245 Kan. 580, 781 P.2d 1099 (1989), the Kansas Supreme Court examined these provisions and held:

> Where a motion to disqualify based on MRPC 1.10(b) has been filed, the district court must have a full hearing to determine whether the attorney in question acquired material and confidential information during the course of his former employment. To support a disqualification order, the district court must make a specific factual finding that the attorney had knowledge of *material* and *confidential* information. The model rules define knowledge as *actual* knowledge of the fact in question, but state that knowledge can be inferred from the circumstances.

245 Kan. at 589, 781 P.2d 1099 (emphases added). *Accord Lansing–Delaware Water Dist. v. Oak Lane Park, Inc.*, 248 Kan. 563, 570, 808 P.2d 1369 (1991); *Graham v. Wyeth Laboratories*, 906 F.2d 1419, 1421 (10th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 511, 112 L.Ed.2d 523 (1990).

In accordance with *Parker* and *Graham*, the court must determine whether the evidence supports the conclusion that Badke, while employed by Turner and Boisseau, actually acquired information both material and confidential to this case. The ultimate burden of proof in this matter lies with McDonald, Tinker—the firm for which disqualification is sought. *See Parker*, 245 Kan. at 589, 781 P.2d 1099. As the moving party, however, Employers bears the initial burden of going forward with evidence sufficient to establish a prima facie case that Badke had actual knowledge of material and confidential information. *See Geisler v. Wyeth Laboratories*, 716 F.Supp. 520, 523 (D.Kan.1989); *Industrial Parts Distributors v. Fram Corp.*, 504 F.Supp. 1194,

---

Rule 226; *Graham v. Wyeth Laboratories*, 906 F.2d 1419, 1421 (10th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 511, 112 L.Ed.2d 523 (1990).

1197 (D.Kan.1981); Anderson, *Motions to Disqualify Opposing Counsel*, 30 Washburn L.J. 238, 257–58 (1991).

## FINDINGS OF FACT

1. From May 1, 1989 until July 12, 1991, Badke was employed as an associate attorney by the law firm of Turner and Boisseau, which has been representing defendant Employers since this suit was filed in 1987. On July 15, 1991, Badke began working for McDonald, Tinker—counsel for plaintiff.

2. Under the practice of the Turner and Boisseau firm, all major litigation is supervised by one of the senior partners. Eldon Boisseau is the senior partner supervising the Employers' file. The supervising partner assigns the case to a monitoring attorney, who shares much of the overall responsibility for a given file. At the time in question, David Steed was the monitoring attorney for the Employers' file. When the monitoring attorney desires assistance on a file, or upon the initiative of the supervising partner, the supervising partner assigns specific miscellaneous assignments to other lawyers in the firm.

3. Badke's participation in this lawsuit began on October 17, 1989, three months after he came to work for Turner and Boisseau. On this date, Badke attended a meeting between himself, Boisseau, Steed and paralegal Barbara Wagner. The meeting lasted approximately two hours.

4. The time slip submitted by Barbara Wagner for the October 17 meeting states: "mtg w/ Eldon, David & John Badke re. strategy in above case". The time slip of David Steed states "review file" and "Conf re: Add Discovery, [defendant] experts & analysis of liability & settlement." The time slip of Eldon Boisseau states that time was billed for "review file."

5. Badke's own time slip for the October 17 meeting contains the notation "F.R.," apparently an abbreviation for "factual research." Badke testified, without objection, that Betty Meyer—the billing secretary for Turner and Boisseau—told him to bill office conferences as "factual research." Betty Meyer did not testify at the hearing.

6. During the October 17 meeting, Badke was given a general outline of the factual and legal issues relevant to this case.

7. The essential facts and legal issues of this case are not in dispute. This is a declaratory action filed by an excess coverage insurance carrier against a primary insurance carrier and the insured. This lawsuit arises out of a judgment rendered in state court against P.B. Hoidale Company, Inc. ("Hoidale")—the insured of both plaintiff and defendant Employers. The state court judgment against Hoidale is in an amount in excess of the policy limits for the policy issued by Employers. Thus, coverage under the excess insurance policy issued by plaintiff has been triggered. Plaintiff seeks to require Employers to pay the amount in excess of Employers' primary policy based upon Employers' alleged bad faith in settling the underlying lawsuit against Hoidale. *See, e.g., Bollinger v. Nuss*, 202 Kan. 326, 449 P.2d 502 (1969). A factual dispute exists whether Employers negligently handled the claim made against Hoidale.[2] Legal issues remain, however, regarding the duties, if any, that a primary insurance carrier such as Employers owes to an excess insurance carrier such as plaintiff, including the duty to conduct in good faith settlement negotiations for claims made against the insured. These legal questions have been fully briefed by the parties and are now the subject of a pending summary judgment motion filed by Employers.

8. At the October 17 meeting, Badke was given the assignment of conducting legal research relative to the duties, if any, of a primary insurance carrier to an excess insurance carrier in settling an insurance claim against their common insured. In order to accomplish this, it was necessary for Badke to have a general outline of the factual circumstances of this case. Badke

---

**2.** This factual issue is currently the subject plaintiff's motion for summary judgment, which argues that Employers' bad faith or negligence has been established as a matter of law.

does not recall any discussion of discovery matters or settlement strategy. Nor does Badke ever recall looking at the memos and client correspondence contained in the file. Badke recalls that he was referred to other persons in the Turner and Boisseau office in Kansas City who had researched "bad faith law" as it pertains to the duties of insurance companies handling claims against their insureds.

9. David Steed also attended the October 17 meeting. Steed testified that in his opinion, certain information was discussed at this meeting that he would consider to be material and confidential within the meaning of the Model Rules of Professional Conduct. Steed did not recall, however, whether Badke was actually present at those portions of the meeting when such material was discussed. Nor did Steed believe that it would have been essential for Badke's research purposes to have attended the entire meeting. Steed can recall no specific confidential information that he communicated to Badke during the entire period from October 17 until November 9, 1989.

10. The court received the deposition testimony of Eldon Boisseau into evidence. Boisseau recalls discussing the research assignment that Badke was given and also recalls discussing his evaluation of the strengths and weaknesses of the case with Badke. (Boisseau Depo. at 11). Boisseau testified: "I would say that we visited and I would also say that that would include some time that he would have looked at the file and studied various parts of it." (Id. at 17). Boisseau is "pretty certain," however, that Steed was not present at the meeting (Id. at 43)—although the testimony of Badke, Steed himself, and the time sheet submitted by Steed clearly indicate that Steed in fact did attend the meeting for a substantial period of time. Boisseau also could not recall whether he conversed with Badke for two hours at the October 17 meeting. (Boisseau Depo. at 17). Boisseau also testified that lawyers at the Turner and Boisseau firm often have informal discussions about cases. He could not, however, point to any confidential information about the case which Badke actually received.

11. Also on October 17, Barbara Wagner prepared a memo to Badke. (Boisseau Depo. at 12; Ext. 2). The memo summarizes the assignment given to Badke and refers to the various legal issues that Badke was to research. The last item on the memo also indicates that Badke was to prepare a trial brief to include facts from Employers' position. Barbara Wagner did not testify at the hearing.

12. Badke testified that he was never asked, nor did he ever prepare a trial brief for this case.

13. On the day following the October 17 meeting, Badke called Eric Kidwell in the Kansas City office of Turner and Boisseau. Kidwell was a legal intern who had researched the general law of good faith required of insurance companies when handling claims against their insureds. Kidwell had compiled a research file on the subject, containing copies of cases, law review articles, and citations, which file he forwarded to Badke.

14. Badke reviewed the file sent to him by Kidwell. Badke submitted a time slip dated 10/20/89 for 3.5 hours of work that states: "L.R. re: Primary Carrier's Duty to Excess Carrier." Badke submitted a second time slip dated 11/1/89 for 4.5 hours of work that states: "L.R. General Law re: Bad Faith Duty." Finally, Badke submitted a time slip dated 11/9/89 for 4.5 hours of work that states "L.R. re: Employer's Duty re: excess carrier".

15. On November 8, 1989, Barbara Wagner sent a memo to Badke asking whether he had had time to give any thought to the October 17 memo. See ¶ 11.

16. When Badke had finished reviewing the research file, he spoke for 15–20 minutes to David Steed regarding the progress of his research and the next step he should take. Steed instructed Badke "not to worry about it for now." He also testified that Badke's research efforts were not helpful to him.

17. There is no evidence that Badke did any work on this case after November 9,

1989. The Turner and Boisseau file on this case contains no memorandum, brief, correspondence, pleading, or any other written document that Badke either authored or participated in preparing.

18. The time slips reveal that the total amount of time spent by Badke on this case was 14.6 hours. All but 2.1 hours of this time were spent doing research, and the evidence showed that this research consisted primarily of Badke's review of the research file sent to him by Kidwell. At the hearing, Turner and Boisseau's counsel acknowledged that no part of Badke's legal research would have provided him with confidential information and that the issue was whether Badke obtained confidential information during the two hour meeting held on October 17, 1989.

19. Discovery in this case is complete, all pretrial motions have been filed, and barring settlement, the trial of this case is imminent.

## CONCLUSIONS

20. The court finds Badke's testimony regarding his work on the file to be credible. The evidence overwhelmingly supports the conclusion that virtually all of Badke's time on this case was devoted to reading material in a legal research file compiled by another person in the Boisseau firm.

21. The court likewise believes Badke's testimony that he does not recall ever looking at the memos and client correspondence contained in the file of this case. Boisseau's testimony to the contrary, at best, is based exclusively on inference. Boisseau inferred that the conference *"would* include some time that he *would* have looked at the file and studied various parts of it." (Boisseau Depo. at 17; emphasis added). The court finds this inference to be inconsistent with the limited nature of Badke's legal research assignment and with the practice of the Turner and Boisseau firm, whereby Boisseau only delegates specific assignments to attorneys, as requested by the monitoring attorney. To the extent that the facts of this case are relevant to the legal research issue assigned to Badke, they are general facts long known to both parties.

22. Similarly speculative is the testimony of Boisseau that Badke would have been privy to unspecified confidential information discussed during equally unspecified informal office conversations concerning the case. The court can confidently assume that "informal conversations" between lawyers at law firms are pervasive. However, the court is not prepared to assume that every conversation contains or concerns confidential information. Similarly, the court will not assume that Badke participated in every such informal conversation. To sustain a motion to disqualify on the basis of such conversations would mandate disqualification in virtually every case where one lawyer changes firms.

23. At best, the evidence offered by Employers might support an inference that Badke—by virtue of his purported, but undemonstrated, access to the file—had *constructive* knowledge of material and confidential information. As *Parker* held, however, dismissal is required only if the court finds evidence of *actual* knowledge of material and confidential information. 245 Kan. at 589, 781 P.2d 1099; *accord Graham v. Wyeth Laboratories,* 760 F.Supp. 1451, 1453 (D.Kan.1991). There simply was no credible evidence to controvert Badke's testimony that he did not review any files containing confidential information.

23. Moreover, "where lawyers move from one firm to the other, courts must balance the previous client's right of confidentiality, the right of having reasonable choice of legal counsel, and the right of lawyers to form new associations and take on new clients when leaving a previous association." *Parker,* 245 Kan. at 588, 781 P.2d 1099. "A court deciding a motion to disqualify counsel must balance several competing considerations, including the privacy of the attorney-client relationship, the prerogative of a party to choose counsel, and the hardships that disqualification imposes on the parties and the entire judicial process." *Lansing–Delaware Water Dist.*

*v. Oak Lane Park, Inc.,* 248 Kan. 563, 571, 808 P.2d 1369 (1991).

24. The court does not believe that Employers' strained, speculative inferences of actual knowledge would outweigh the hardships of disqualification in this case. This case is ready for trial. It is the oldest case on the court's docket. A three week trial is predicted. The deleterious effects of a disqualification are too obvious to merit discussion.

 25. The court is nevertheless cognizant of the dilemma posed by the holding of *Parker:* in order to establish that the former attorney had actual knowledge of material and confidential information, some cases may require disclosure of the very information that the movant seeks to maintain as confidential. *See Parker,* 245 Kan. at 590, 781 P.2d 1099 (McFarland, J., dissenting); *cf. Lansing–Delaware Water Dist.,* 248 Kan. at 571, 781 P.2d 1099 (disqualification allowed based upon lawyer's recollection of specific instances when he revealed unspecified confidential information to former lawyer). In an effort to give Employers every benefit of the doubt, the court offered Employers the opportunity for *in camera* review of any information that it considered material and confidential. Employers submitted some information but could produce no evidence that Badke saw any of it. (Boisseau Depo., 73–75) A portion of the confidential information clearly demonstrates that Badke's participation constituted a minuscule portion of the time Turner and Boisseau has devoted to preparation of the case. The time factor, standing alone, is not determinative, but it is a material fact which supports the conclusion that Badke, as a most minor player on the Turner and Boisseau team, did not gain any actual knowledge of confidential and material information about *this case.* This is not to say that two hours in another kind of case might be sufficient involvement to require disqualification. For example, two hours spent in conference with a client who is a defendant in a criminal prosecution by an attorney who later becomes employed in the prosecutor's office would present a much more compelling case for disqualifi-

cation, at least in this court's opinion. Many other scenarios can be postulated, but this case must turn on its own facts. Hence, the court is hard pressed to find that Employers has met its burden of going forward with evidence sufficient to establish a prima facie case that Badke gained actual knowledge of confidential material information. However, assuming that Employers met this burden, the court finds that McDonald Tinker has met its burden to establish that Badke had no such information.

Accordingly, the motion of Employers Mutual Casualty Company for an order disqualifying the law firm of McDonald, Tinker, Skaer, Quinn & Herrington, P.A. as counsel for plaintiff is hereby denied. (Doc. 278).

The confidential information supplied by Employers shall be placed in a sealed envelope to be opened only upon order of the court.

IT IS SO ORDERED.