NOT DESIGNATED FOR PUBLICATION

No. 117,449

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

REVERSE MORTGAGE SOLUTIONS, INC.,
*Appellee*,

v.

PAULA K. GOLDWYN
aka PAULA JOAN ENLOW, et al.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Riley District Court; JOHN F. BOSCH, judge. Opinion filed December 29, 2017.
Affirmed.

*Paula K. Goldwyn*, appellant pro se.

*Mark M. Haddad* and *Beverly M. Weber*, of Martin Leigh PC, of Kansas City, Missouri, for
appellee.

Before ARNOLD-BURGER, C.J., LEBEN and POWELL, JJ.

PER CURIAM: Paula K. Goldwyn aka Paula Joan Enloe appeals the district court's
grant of summary judgment in favor of Reverse Mortgage Solutions, Inc. (RMS). RMS
initiated foreclosure proceedings on Goldwyn's property pursuant to the terms of a
reverse mortgage previously entered into between Urban Financial Group, Inc. (UFG)
and Goldwyn's mother, the original owner of the property. Goldwyn, who appeals pro se,
raises numerous arguments on appeal, among them being that RMS lacked standing to
enforce the terms of the reverse mortgage, that RMS was barred from bringing suit due to

1

its alleged failure to follow the relevant mortgage servicing regulations, and that the district court erred in its handling of the case below. After a thorough review of the record, we find no error and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On October 1, 2007, Bernice A. Enlow, Goldwyn's mother, executed a loan agreement with UFG and the United States Department of Housing and Urban Development (HUD). At the time she executed the agreement, Enlow was the sole owner and in possession of her residence located in Manhattan, Kansas. Under the terms of the agreement, UFG loaned Enlow the principal sum of $262,500, and in exchange, Enlow agreed to repay all loan advances made to her, plus interest to be calculated as provided in the note. To secure this note, Enlow granted a real estate mortgage to UFG, which was duly acknowledged and filed. Collectively, the loan agreement, note, and mortgage make up what is commonly referred to as a reverse mortgage.

Black's Law Dictionary 1165 (10th ed. 2014) defines a "reverse annuity mortgage"—also referred to as a "reverse mortgage"—as "[a] mortgage in which the lender disburses money over a long period to provide regular income to the ([usually] elderly) borrower, and in which the loan is repaid in a lump sum when the borrower dies or when the property is sold." Because the use of reverse mortgages is relatively new, no Kansas court has yet provided a definition of a reverse mortgage. However, in *Summers v. Financial Freedom Acquisition LLC*, 807 F.3d 351, 354 (1st Cir. 2015), the First Circuit Court of Appeals provided the following definition: "A reverse mortgage is a loan or line of credit available to a person over the age of 62 who has equity in real estate, typically the person's home. The loan provides the borrower with cash . . . and is secured by the borrower's equity in the real estate. There are no monthly payments; instead, the loan is due and payable in full when the borrower dies, sells the home, or no longer uses the home as [his or] her principal residence."

2

On August 2, 2012, Enlow passed away. Upon the death of her mother, Goldwyn became the sole owner of the property by operation of a transfer on death deed duly executed, filed, and recorded. On January 24, 2013, a probate action was commenced in the district court; to date, the administrator of Enlow's estate has not disaffirmed the reverse mortgage or any of its components. In mid-2013 the reverse mortgage was assigned to RMS.

The terms of the reverse mortgage provide that the mortgagee may require an immediate payment in full of all sums secured by the mortgage if the borrower, in this case Enlow, dies and the property is not the principal residence of at least one of the surviving borrowers. As Enlow was the only resident of the property and the only borrower, after her death the loan became due and owing, prompting RMS to file a mortgage foreclosure action on September 18, 2013, seeking an in rem judgment against the property. A copy of the note was properly attached to the petition, and RMS is in possession of the original note and mortgage as the owner and holder.

Goldwyn's response to RMS's foreclosure petition was due on October 15, 2013. However, Goldwyn obtained a 14-day clerk's extension of time to file her answer, extending the time to October 29, 2013. The day before her answer was due, Goldwyn filed a motion for an extension of time, requesting an additional 30 days to respond to the petition. Goldwyn filed her motion pro se, and the motion did not include any reasons justifying the additional time. Nevertheless, the district court granted Goldwyn's motion and gave her until November 28, 2013, to file an answer.

This deadline came and went. On December 2, 2013, Goldwyn sought a second 30-day extension to respond to the petition. In her pro se motion, Goldwyn indicated she needed the additional time as a result of "tremendous pressures of a variety of stressful circumstances taking place in her life." The district court granted this extension and gave Goldwyn until January 2, 2014, to respond.

3

On the day her answer was due, Goldwyn requested yet another extension of time to file her answer because of "tremendous pressures of a variety of stressful circumstances taking place in her life." This time, the district court denied her request on January 13, 2014. On January 28, 2014, Goldwyn filed a pro se motion to alter or amend the denial of her third extension of time to file an answer. RMS opposed this motion, and the district court ultimately denied it on April 24, 2014. Goldwyn filed an untimely notice of appeal after this denial, but this matter is not at issue in this appeal.

On August 15, 2014, RMS filed a motion for leave to amend its petition to correct the principal balance of the mortgage alleged in the petition. Three days later the district court granted the motion. At the time of the amendment, Goldwyn was in default for failing to answer or otherwise respond to RMS's original petition. On August 26, 2014, Goldwyn obtained counsel, and he filed an entry of appearance on her behalf.

Largely because of Goldwyn's failure to file an answer, on October 27, 2014, the district court entered a default judgment in favor of RMS. On December 1, 2014, Goldwyn, through her attorney, filed an objection to the sheriff's sale and moved to set aside the default judgment. The district court entered an order of sale, and a sheriff's sale occurred on March 24, 2015. On April 1, 2015, the district court denied Goldwyn's objection to the sheriff's sale and motion to set aside the default judgment. Goldwyn timely filed a notice of appeal of the court's judgment.

On June 5, 2015, RMS filed its motion to confirm the sheriff's sale, and Goldwyn objected. On November 23, 2015, the district court held a hearing on this motion. At the hearing, RMS and Goldwyn informed the district court they had entered into an agreement in which Goldwyn would dismiss her notice of appeal and withdraw her objection to the motion to confirm the sheriff's sale and, in exchange, RMS would agree to set aside the default judgment and sheriff's sale and allow Goldwyn to file an answer to its amended petition. Accordingly, the district court dismissed Goldwyn's appeal, set

4

aside the default judgment and sheriff's sale, and ordered Goldwyn to file her answer to RMS's amended petition no later than December 16, 2015. This time, Goldwyn timely filed an answer to the amended petition.

On September 1, 2016, RMS filed a motion for summary judgment. However, on October 6, 2016, Goldwyn's counsel filed a motion to withdraw from further representation of Goldwyn, arguing that Goldwyn had failed to fulfill material obligations owed to him. On November 1, 2016, acting pro se, Goldwyn filed her objection to the motion to withdraw, admitting she had received a copy of the summary judgment motion from her counsel on September 22, 2016. On November 8, 2016, the district court granted Goldwyn's counsel's motion. The next day, the district court granted RMS's motion for summary judgment and entered an in rem judgment against the property, holding that while Goldwyn had filed an answer to the amended petition, she had failed to timely file a response to RMS's motion for summary judgment and was, therefore, in default.

Goldwyn timely appeals.

On appeal, Goldwyn makes numerous arguments which, for purposes of clarity, we have consolidated into the following seven issues listed chronologically in accordance with the case's procedural posture: (1) RMS lacked the standing to bring the foreclosure action; (2) RMS's alleged noncompliance with federal foreclosure regulations barred its lawsuit; (3) the district court erred by denying Goldwyn's third request for an extension of time to file her answer to the original petition; (4) the district court improperly allowed RMS to amend its petition; (5) the district court erred by granting the first default judgment; (6) the district court erred by granting Goldwyn's attorney's motion to withdraw; and (7) the district court erred by granting summary judgment in favor of RMS. We address each argument in turn.

I.    DOES RMS HAVE STANDING TO BRING THIS FORECLOSURE ACTION?

Goldwyn first argues that RMS does not have standing to bring this foreclosure action. Specifically, she argues that RMS failed to comply with 24 C.F.R. § 206.125(d)(1) (2015), which requires a foreclosure action to be brought within six months of the mortgagor's death, thus denying it standing to bring this foreclosure suit. In response, RMS argues that noncompliance with 24 C.F.R. § 206.125 is an affirmative defense, not an issue of standing, which should have been raised in Goldwyn's answer and that her failure to do so below waives this issue on appeal. As we will explain, whether RMS failed to timely seek foreclosure is irrelevant to the question of standing.

> "Standing is a jurisdictional question whereby courts determine 'whether the plaintiff has alleged such a personal stake in the outcome of a controversy as to warrant invocation of jurisdiction and to justify exercise of the court's remedial powers on his or her behalf.' A party must have a sufficient stake in the outcome of an otherwise justiciable controversy in order to obtain judicial resolution of that controversy. [Citations omitted.]" *Board of Sumner County Comm'rs v. Bremby*, 286 Kan. 745, 750-51, 189 P.3d 494 (2008).

To have standing, a party "must demonstrate that he or she suffered a cognizable injury and that there is a causal connection between the injury and the challenged conduct." 286 Kan. at 761. "[I]f a person does not have standing to challenge an action or to request a particular type of relief, then 'there is no justiciable case or controversy' and the suit must be dismissed." 286 Kan. at 750 (quoting *Kansas Bar Ass'n v. Judges of the Third Judicial Dist.*, 270 Kan. 489, 490, 14 P.3d 1154 [2000]). Because standing is a jurisdictional question, it may be raised by the parties or the court at any time and is one over which we exercise unlimited review. See *FV-I, Inc. v. Kallevig*, 306 Kan. 204, 211, 392 P.3d 1248 (2017).

In order to establish an injury in a mortgage foreclosing proceeding, RMS must show that the debt is due and owing. Whether the debt is due and owing is based upon the

6

terms of the contract—in this instance, the promissory note governing the reverse mortgage. See 306 Kan. at 213. Moreover, RMS must demonstrate that it has been injured by establishing that it is the party entitled to enforce the terms of the promissory note. See Restatement (Third) of Property (Mortgages) § 5.4(c) (1997) ("A mortgage may be enforced only by, or in behalf of, a person who is entitled to enforce the obligation the mortgage secures."). It is the "'holder of a promissory note [who] has standing to enforce the terms of indebtedness, including the right to foreclose on a mortgage that secures it.'" 306 Kan. at 214 (quoting *FV-I, Inc. v. Kallevig*, No. 111,235, 2015 WL 717776 [Kan. App. 2015] [unpublished opinion]).

According to the record, it is undisputed that RMS had possession of both the note and mortgage at the time it filed the foreclosure action because the note and mortgage had previously been assigned to it. It is also undisputed that the amounts owed under the note are due and owing. Goldwyn's mother, Enlow, was the sole owner and occupant of the real estate and the sole borrower. Under the terms of the note, the loan became due upon her death. As the holder of both the note and mortgage, RMS is the entity entitled to enforce the terms of the note, meaning RMS is the party entitled to repayment of the loan. RMS therefore has standing to bring a foreclosure action on the mortgage which secures the note. As RMS correctly argues, whether it violated 24 C.F.R. § 206.125(d)(1)— whether the foreclosure action was timely filed—is immaterial to and separate from the question of standing.

II.     CAN GOLDWYN RAISE THE AFFIRMATIVE DEFENSE THAT RMS ALLEGEDLY FAILED TO COMPLY WITH 24 C.F.R. § 206.125?

As we have already explained above, RMS's compliance or noncompliance with the federal regulation is irrelevant to the issue of standing. But in light of our duty to construe Goldwyn's pleadings liberally, we will also examine whether the regulation bars RMS's suit in some other way. Goldwyn argues that RMS's failure to comply with 24

7

C.F.R. § 206.125(b) and (c)—which required RMS to obtain an appraisal prior to conducting a foreclosure sale and to allow the mortgagor to sell the property to satisfy the loan—bars this action. In response, RMS argues that compliance with 24 C.F.R. § 206.125 is an affirmative defense that must be raised in a responsive proceeding or it is waived and that Goldwyn failed to raise RMS's alleged noncompliance with the regulation in her answer; therefore, she waived this affirmative defense. RMS also argues that these subsections do not apply to Goldwyn.

An affirmative defense is "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true." Black's Law Dictionary 509. Affirmative defenses must be pled in a defendant's answer. See K.S.A. 2016 Supp. 60-208(c)(1). "A defendant failing to assert an affirmative defense waives it. *Turon State Bank v. Bozarth*, 235 Kan. 786, Syl. ¶ 1, 684 P.2d 419 (1984)." *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 262, 261 P.3d 943 (2011). K.S.A. 2016 Supp. 60-208(c)(1) provides the following general rule for pleading an affirmative defense:

> "*Affirmative defenses*. (1) *In general*. In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including:
> "(A) Accord and satisfaction;
> "(B) arbitration and award;
> "(C) assumption of risk;
> "(D) contributory negligence or comparative fault;
> "(E) duress;
> "(F) estoppel;
> "(G) failure of consideration;
> "(H) fraud, illegality;
> "(I) injury by fellow servant;
> "(J) laches;
> "(K) license;
> "(L) payment;

8

"(M) release;

"(N) res judicata;

"(O) statute of frauds;

"(P) statute of limitations; and

"(Q) waiver."

Before we can answer whether RMS's alleged noncompliance with 24 C.F.R. § 206.125 constitutes an affirmative defense which Goldwyn should have raised in her answer, we must interpret K.S.A. 2016 Supp. 60-208(c) as well as examine the nature of the duty imposed by the federal regulation.

Interpretation of a statute is a question of law over which we exercise unlimited review. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015). The most fundamental rule of statutory construction "is that the intent of the legislature governs if that intent can be ascertained." *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016). Our duty is first to attempt "to ascertain legislative intent" through the statutory language enacted, "giving common words their ordinary meanings." *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 918, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013). When a statute is plain and unambiguous, we are not to speculate "as to the legislative intent behind it and will not read into the statute something not readily found in it." *In re Tax Appeal of Burch*, 296 Kan. 713, 722, 294 P.3d 1155 (2013).

In 1988 the Federal Housing Administration (FHA) Reverse Mortgage bill became law. 12 U.S.C. § 1715z-20 (1988).

"This law provided authority for the [FHA] to launch the Home Equity Conversion Mortgage ('HECM') Insurance Demonstration, a pilot project that was eventually adopted by [HUD]. The legislation set guidelines for consumer protection and basic program requirements, with HUD taking the lead in establishing the main features of the HECM

9

program. As a result of this 1988 legislation, most of today's reverse mortgages are made through HUD, whose FHA arm insures the loan." Schieke, *The Advisability of Reverse Mortgage to Pay for Care Needs*, 47-JUN MD. B.J. 26, 29 (2014).

Pursuant to the authority conferred by the United States Congress, HUD promulgated regulations pertaining to HECM, or reverse mortgages. See 12 U.S.C. § 1715z-20(h)(3); 24 C.F.R. § 206.101 et seq. The regulations relating to the foreclosure of federally insured reverse mortgages are codified in Title 24, Part 206 (Home Equity Conversion Mortgage Insurance), Subpart C (Contract Rights and Obligations) of the Code of Federal Regulations. 24 C.F.R. §§ 206.101-206.146 (2015). The pertinent parts of 24 C.F.R. § 206.125 state:

"(b) *Appraisal*. The mortgagee shall obtain an appraisal of the property no later than 30 days after the mortgagor is notified that the mortgage is due and payable, or no later than 30 days after the mortgagee becomes aware of the mortgagor's death, or upon the mortgagor's request in connection with a pending sale. The property shall be appraised no later than 15 days before a foreclosure sale. The appraisal shall be at the mortgagor's expense unless the mortgage is due and payable. If the mortgage is due and payable, the appraisal shall be at the mortgagee's expense but the mortgagee shall have a right to be reimbursed out of the proceeds of any sale by the mortgagor.

"(c) *Sale by mortgagor*. Whether or not the mortgage is due and payable, the mortgagor may sell the property for at least the lesser of the mortgage balance or the appraised value (determined under § 206.125(b)). If the mortgage is due and payable at the time the contract for sale is executed, the mortgagor may sell the property for at least the lesser of the mortgage balance or five percent under the appraised value. The mortgagee shall satisfy the mortgage of record (and the Secretary will satisfy the second mortgage required under § 206.27(e) of record) in order to facilitate the sale, provided that there are no junior liens (except the mortgage to secure payments by the Secretary under § 206.27(e)) and all the net proceeds from the sale are paid to the mortgagee.

"(d) *Initiation of foreclosure*. (1) The mortgagee shall commence foreclosure of the mortgage within six months of giving notice to the mortgagor that the mortgage is due and payable, or six months from the date of the mortgagor's death if applicable, or within such additional time as may be approved by the Secretary."

As to Goldwyn's argument that 24 C.F.R. § 206.125(d)(1) requires a reverse mortgage foreclosure action to be commenced within a certain period of time, specifically within six months of the mortgagor's death, the federal regulation appears to act as a statute of limitations because "'[a] statute of limitations extinguishes the right to prosecute an accrued cause of action after a period of time.'" *Shirley v. Reif*, 260 Kan. 514, 517, 920 P.2d 405 (1996) (quoting *Harding v. K.C. Wall Products, Inc.*, 250 Kan. 655, 668, 831 P.2d 958 [1992]).

By the clear language of K.S.A. 2016 Supp. 60-208(c)(1)(P), a statute of limitations defense is an affirmative defense which must be raised by a defendant in a responsive pleading or answer. Assuming without deciding that Goldwyn, as a nonsignatory to the reverse mortgage, is entitled to invoke the protections contained in HUD's reverse mortgage regulations, Goldwyn was required to raise RMS's alleged failure to timely foreclose on its reverse mortgage as required by 24 C.F.R. § 206.125(d)(1) in her answer. Goldwyn's failure to do so means she waived this possible defense to the foreclosure action.

Goldwyn's argument that RMS's failure to comply with 24 C.F.R. § 206.125(b) and (c) bars its foreclosure action is more problematic because these two requirements do not neatly fall into the list of affirmative defenses which must be pled under K.S.A. 2016 Supp. 60-208(c). Where a statute's language or text is unclear or ambiguous we may use canons of construction or legislative history to construe the Legislature's intent. *Northern Natural Gas Co.*, 296 Kan. at 918. "Dictionary definitions are good sources for the 'ordinary, contemporary, common' meanings of words." *Midwest Crane & Rigging, LLC*

11

*v. Kansas Corporation Commission*, 306 Kan. 845, 851, 397 P.3d 1205 (2017) (quoting *Walters v. Metro. Educ. Enterprises, Inc.*, 519 U.S. 202, 207, 117 S. Ct. 660, 136 L. Ed. 2d 644 [1997]).

In giving the language of K.S.A. 2016 Supp. 60-208(c)(1) its ordinary meaning, it is clear the statute provides a nonexclusive list of affirmative defenses because the statute uses the word "including" preceding the list. Garner's Dictionary of Legal Usage states:

> "[I]ncluding is sometimes misused for *namely*. But it should not be used to introduce an exhaustive list, for it implies that the list is only partial. In the words of one federal court, 'It is hornbook law that the use of the word *including* indicates that the specified list . . . is illustrative, not exhaustive.' [Citation omitted.]" Garner's Dictionary of Legal Usage 439 (3d ed. 2011).

This usage is consistent in other dictionaries. See Black's Law Dictionary 880 ("The participle *including* typically indicates a partial list."); The American Heritage Dictionary of the English Language 888 (5th ed. 2011) ("1. To contain or take in as a part, element, or member. 2. To consider as part of or allow into a group or class."). Applying these definitions to the statute in question, the list of affirmative defenses in K.S.A. 2016 Supp. 60-208(c)(1) is a partial, nonexclusive list.

Given that Goldwyn's allegation that RMS's alleged failure to appraise the property before the sale or to allow the mortgagee to sell the property could be included as an affirmative defense under K.S.A. 2016 Supp. 60-208(c), we turn to other cases analyzing this question. Unfortunately, there is no Kansas caselaw on point, but courts in several other jurisdictions have held that noncompliance with HUD regulations is an affirmative defense.

One of the first courts to acknowledge an affirmative defense of failure to comply with foreclosure regulations in traditional mortgages was the Illinois Court of Appeals. In

12

*Bankers Life Co. v. Denton*, 120 Ill. App. 3d 576, 578-79, 458 N.E.2d 203 (1983), that court held:

> "It is evident from the language of the servicing regulations that the mortgagee must comply with these provisions prior to the commencement of a foreclosure proceeding. Therefore, . . . we believe that the failure to comply with these servicing regulations which are mandatory and have the force and effect of law can be raised in a foreclosure proceeding as an affirmative defense.

> "While it is true that . . . a pattern of refusal or failure to comply with the servicing requirements will be cause for withdrawal of a mortgagee's approval to participate in the federal mortgage insurance program, we do not believe this to be an adequate remedy for the individual mortgagor. The legislative purpose of the National Housing Act set forth in 12 U.S.C., Section 1701t, is to assist in providing a decent home and a suitable living environment for every American family. Thus, the primary beneficiaries of the act and its implementing regulations are those receiving assistance through its various housing programs. This would include the defendants as mortgagors of a H.U.D. insured mortgage.

> "Therefore, in order to effectively insure that the interests of the primary beneficiaries of the H.U.D. mortgage servicing requirements are being protected, mortgagors must be allowed to raise noncompliance with the servicing requirements as a defense to a foreclosure action. H.U.D.'s withdrawal of a mortgagee's approval to participate in the mortgage insurance program after repeated violations of the servicing requirements is a useless remedy for the individual faced with the immediate problem of the foreclosure action; an action which could possibly be avoided by either assignment of the mortgage to H.U.D. or further efforts to arrange a revised payment plan."

Other jurisdictions have followed this path of recognizing a failure to comply with federal servicing and foreclosure regulations promulgated by HUD relating to traditional mortgages as an affirmative defense. See *Lacy-McKinney v. Taylor, Bean & Whitaker Mortgage Corp.*, 937 N.E.2d 853, 864 (Ind. Ct. App. 2010) (holding failure to comply

with HUD servicing responsibilities can properly be raised as an affirmative defense); *Wells Fargo Home Mortgage, Inc. v. Neal*, 398 Md. 705, 727, 922 A.2d 538 (2007) (holding "a mortgagor may not wield as a sword HUD regulations [but] may assert . . . regulatory noncompliance as a shield against unauthorized foreclosure actions."); *Federal National Mortgage Ass'n v. Ricks*, 372 N.Y.S.2d 485, 497, 83 Misc. 2d 814 (1975) (holding mortgagor "may interpose as a first defense the failure of [mortgagee] to comply with the provisions of the HUD Handbook"). Extensive research on this matter has only uncovered one court that has recognized a failure to comply with a subsection of 24 C.F.R. § 206.125 as an affirmative defense. See *Wells Fargo Bank, N.A. v. Schindler*, No. 3728 EDA 2015, 2017 WL 1078672, at *7 n.5 (Pa. Super. Ct. 2017) (unpublished opinion) (holding 24 C.F.R. § 206.125[f] is an affirmative defense that must be raised in a responsive pleading and failure to do so waived the issue on appeal), *reargument denied* May 22, 2017. It appears no court has held conversely—that noncompliance with 24 C.F.R. § 206.125 is *not* an affirmative defense.

We should note that the context in which these cases were decided typically involved signatories to the note and mortgage. Because Goldwyn is a nonsignatory—she became the owner of the property by virtue of a transfer on death deed—Goldwyn enjoys no privity of contract with either UFG or RMS, and we decline to declare that the requirements contained in 24 C.F.R. § 206.125 could serve as a defense to a foreclosure petition under the facts before us. But even if we were to assume such a defense was available to Goldwyn, given the precedents we have cited, we agree that any defense based upon noncompliance with 24 C.F.R. § 206.125 must be alleged as an affirmative defense in a responsive pleading or answer. See *Lacy-McKinney*, 937 N.E.2d at 864; *Wells Fargo Home Mortg., Inc.*, 398 Md. At 727; *Bankers Life Co.*, 120 Ill. App. 3d at 578-79; *Federal Nat'l Mortg. Ass'n*, 372 N.Y.S.2d at 497; *Schindler*, 2017 WL 1078672, at *7 n.5. Because Goldwyn never pled noncompliance with 24 C.F.R. § 206.125 in her answer, she has waived such defense.

14

Finally, even if the requirements of 24 C.F.R. § 206.125 were to be classified as conditions precedent to a party's ability to bring a foreclosure action, Goldwyn's claim still fails. K.S.A. 2016 Supp. 60-209(c) mandates: "In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or have been performed. But when denying that a condition precedent has occurred or been performed, a party must do so with particularity." Failure to comply with the statute is a waiver of such a defense. *Marr v. Geiger Ready-Mix Co.*, 209 Kan. 40, 50, 495 P.2d 1399 (1972). Goldwyn did not allege with particularity in her answer that RMS failed to comply with any condition precedent. As such, any defense based upon RMS's alleged failure to comply with 24 C.F.R. § 206.125 has been waived.

III. DID THE DISTRICT COURT ABUSE ITS DISCRETION IN DENYING GOLDWYN'S THIRD REQUEST FOR AN EXTENSION OF TIME TO FILE HER ANSWER TO THE ORIGINAL PETITION?

Goldwyn also argues the district court erred in denying her third pro se request for an extension of time to file her answer to the original petition. Specifically, she argues that because she is pro se, it was unfair for the district court to fail to warn her when granting her second extension of time to file her answer to the original petition that it would be her last extension of time. In response, RMS makes three arguments in opposition, the third being that this issue is moot because Goldwyn timely answered the amended petition in accordance with the agreement between RMS and Goldwyn in exchange for the dismissal of Goldwyn's first notice of appeal. We agree with RMS.

We review the denial of a motion for extension of time for an abuse of discretion. See *In re J.A.H.*, 285 Kan. 375, 384-85, 172 P.3d 1 (2007). As a general rule, Kansas courts "do not decide moot questions or render advisory opinions." *State v. Montgomery*, 295 Kan. 837, 840, 286 P.3d 866 (2012). The mootness doctrine is one of "court policy, which recognizes that the role of a court is to 'determine real controversies relative to the

15

legal rights of persons and properties which are actually involved in the particular case properly brought before it and to adjudicate those rights in such manner that the determination will be operative, final, and conclusive.' [Citations omitted.]" *Stano v. Pryor*, 52 Kan. App. 2d 679, 682-83, 372 P.3d 427 (2016) (quoting *State v. Hilton*, 295 Kan. 845, 849, 286 P.3d 871 [2012]). "A justiciable controversy has definite and concrete issues between the parties and 'adverse legal interests that are immediate, real, and amenable to conclusive relief.' [Citation omitted.]" *Montgomery*, 295 Kan. at 840.

On November 23, 2015, RMS and Goldwyn informed the district court they had entered into an agreement in which Goldwyn would dismiss her first notice of appeal and withdraw her objection to the motion to confirm the first sheriff's sale; in exchange, RMS would agree to set aside the journal entry of foreclosure and the sheriff's sale and allow Goldwyn to file an answer to the amended petition. The district court accepted this agreement, and Goldwyn timely filed her answer to the amended petition. As a result, it no longer matters whether Goldwyn should have been given more time to answer RMS's original petition because the original petition was superseded by the amended one, rendering the issue moot.

IV.     WAS THE PETITION PROPERLY AMENDED, FILED, AND SERVED?

Next, Goldwyn argues that the original petition was not properly amended. She make two arguments to support her contention. First, Goldwyn argues the district court abused its discretion in allowing RMS to amend its petition; second, Goldwyn argues that RMS never filed the amended petition in the district court or properly served a copy upon her.

A.	*Did the district court abuse its discretion in granting leave to RMS to amend its petition?*

We review the granting of a motion for leave to amend a petition for an abuse of discretion. See *Hoover Equipment Co. v. Smith*, 198 Kan. 127, 133, 422 P.2d 914 (1967). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) the decision is based on an error of law; or (3) the decision is based on an error of fact. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015). "One who asserts the trial court has abused its discretion bears the burden of showing such abuse of discretion." *Leeper v. Schroer, Rice, Bryan & Lykins, P.A.*, 241 Kan. 241, Syl. ¶ 7, 736 P.2d 882 (1987).

K.S.A. 2016 Supp. 60-215(a)(1) provides that, in certain situations which are not applicable here, a party may amend its pleading "once as a matter of course." In all other circumstances, such as here, "a party may amend its pleading only with the opposing party's written consent, or the court's leave. The court should freely give leave when justice so requires." K.S.A. 2016 Supp. 60-215(a)(2). "A district court is given broad discretionary power under [K.S.A.] 60-215 to permit the amendment of pleadings. An appellate court will not find reversible error unless the amendment allowed or denied is so material it affects the substantial rights of the adverse party." *Johnson v. Board of Pratt County Comm'rs*, 259 Kan. 305, 327, 913 P.2d 119 (1996) (citing *Williams v. Amoco Production Co.*, 241 Kan. 102, 109, 734 P.2d 1113 [1987]); see also *Hoover Equipment Co.*, 198 Kan. at 133 ("A trial court is given wide latitude and discretion in permitting or refusing amendments of pleading in the interests of justice. In the absence of a clear abuse of discretion the order of the trial court should be approved.").

Here, RMS sought leave to correct the principal balance of the mortgage alleged in the original petition. At the time of the amendment, Goldwyn had not yet answered or otherwise responded to RMS's petition, and the district court granted RMS's motion the

17

next business day. Goldwyn filed no objection to the order granting the amendment, even after her counsel entered his appearance. In her brief, Goldwyn makes no showing that the allowed amendment was so material that it affected her substantial rights. See *Johnson*, 259 Kan. at 327. Given that she bears the burden of such a showing, we conclude she has failed to do so. See *Leeper*, 241 Kan. 241, Syl. ¶ 7. Moreover, from a review of the record, it appears such a showing would have been impossible. The amendment occurred on August 18, 2014. Goldwyn, pursuant to the agreement of the parties, timely answered the amended petition. Summary judgment was not granted in favor of RMS until November 9, 2016. Goldwyn, who argues the amendment equated to her "repeatedly not getting her 'day in court,'" had over two years' notice of the amendment to prepare a defense against the allegations contained in the amended petition. Clearly, the district court did not abuse its discretion in allowing RMS to amend the principal balance of the mortgage alleged in the original petition.

B. *Was the amended petition properly filed and served?*

Goldwyn also argues the amended petition was never filed in the district court and not properly served upon her. However, this assertion is contradicted by the record on appeal. RMS's motion for leave to amend the petition was filed on August 15, 2014, and the amended petition itself was also filed that same day. Both documents indicate that they were served upon Goldwyn via first class mail, and Goldwyn admits as much. Moreover, the amended petition clearly bears the filing stamp of the Clerk of the Riley County District Court. The amended petition was filed. Given that service via mail to the defendant's last known address is a sufficient method of service when the party is unrepresented by an attorney—Goldwyn's attorney had not yet entered his appearance at the time of service—Goldwyn was properly served with RMS's amended petition. See K.S.A. 2016 Supp. 60-205(b)(2)(C).

18

Finally, we would point out that even if an error occurred in the service of the amended petition, Goldwyn has waived any objection to such error. "Subsection (h) of K.S.A. 60-212 provides that a defense of . . . insufficiency of service of process is waived if it is not made by motion or included in a responsive pleading." *Kansas Bd. of Regents v. Skinner*, 267 Kan. 808, 812, 987 P.2d 1096 (1999). Goldwyn did not raise insufficiency of service in her answer to the amended petition.

In her reply brief, Goldwyn strongly disputes RMS's argument that she waived this defense by failing to assert it in her answer to the amended petition. She supports her argument by quoting the first paragraph of her answer to the first amended petition:

> "1. Defendant is without sufficient information or belief to either admit or deny sufficiency of notice or summons, or service thereof as alleged in ¶¶ 3-6 and therefore DENIES ¶¶ 3-6 of the Amended Petition and puts Plaintiff on strict proof thereof."

Paragraphs 3, 4, 5, and 6 of the amended petition assert that the following parties have been both properly notified of the action and served: HUD (Paragraph 3), the United States of America (Paragraph 4), Jan Ackerman (Paragraph 5), and the Kansas Department of Health and Environment (DHE) (Paragraph 6). The assertion that Goldwyn was properly notified and served is contained in Paragraph 2 of the amended petition. Goldwyn does not raise insufficient service as a defense in her answer; thus, that defense is waived. See K.S.A. 2016 Supp. 60-212(h).

V.     DID THE DISTRICT COURT ERR IN ITS ORDER OF DEFAULT JUDGMENT?

Next, Goldwyn argues that the district court erred in its order of default judgment. RMS argues that this issue is moot, and we agree.

19

On October 27, 2014, the district court found Goldwyn in default and entered a journal entry of foreclosure in favor of RMS. However, pursuant to the agreement of RMS and Goldwyn, this order was set aside.

As we have already explained, our court does not decide moot questions or render advisory opinions. *Montgomery*, 295 Kan. at 840. Because the default order was set aside, any alleged error in granting it by the district court is moot as there is no remedy that can provide Goldwyn with conclusive relief.

VI.     DID THE DISTRICT COURT ABUSE ITS DISCRETION IN GRANTING GOLDWYN'S COUNSEL'S MOTION TO WITHDRAW?

Goldwyn also argues the district court erred in allowing her counsel to withdraw from the case. The granting or denial of a motion to withdraw is reviewed for an abuse of discretion. See *State v. Ferguson*, 254 Kan. 62, 69, 864 P.2d 693 (1993).

Kansas Rule of Professional Conduct 1.16 (2017 Kan. S. Ct. R. 331) states in pertinent part:

"(b) Except as stated in paragraph (c), a lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client, or if:

(1) the client has used the lawyer's services to perpetrate a crime or fraud;

(2) a client insists upon pursuing an objective that the lawyer considers repugnant or imprudent;

(3) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;

(4) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or

(5) other good cause for withdrawal exists.

20

"(c) When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation."

Comment 8 to this rule states: "A lawyer may withdraw if the client refuses to abide by the terms of an agreement relating to the representation, such as an agreement concerning fees or court costs or an agreement limiting the objectives of the representation." 2017 Kan. S. Ct. R. 332.

On September 19, 2016, Goldwyn's attorney informed the court that he was having difficulty communicating with his client. In his motion for an extension of time in which to file a response to the motion for summary judgment, Goldwyn's counsel stated: "[Counsel] is attempting to ascertain and confirm whether or not [Goldwyn] wishes to continue to retain this attorney and law firm for purposes of defending against the Foreclosure Petition." On October 4, 2016, Goldwyn's counsel filed his motion for permission to withdrawal from further representation. In this motion, counsel stated:

> "[C]ounsel would show the Court that he has delivered a copy of the Motion for Summary Judgment to [Goldwyn] and advised [Goldwyn] in writing at all mailing addresses, phone numbers, and electronic addresses known to counsel, of [Goldwyn's] obligations owed to her attorney pursuant to the Kansas Rule of Professional Conduct Rule 1.16 but has heard nothing from [Goldwyn], nor otherwise received any communication or contact from [Goldwyn]."

On October 18, 2016, 14 days later, Goldwyn filed a motion for an extension of time to file a response to her counsel's motion for permission to withdraw. In this motion, Goldwyn advised that she was waiting to receive an itemized billing for the case and that she was "attempting to ascertain whether or not her attorney is willing to accept payments in this matter." In her filed objection, Goldwyn again asserted that she was waiting for a list of itemized billing and argued that because the matter was quickly approaching conclusion, her counsel should not be allowed to withdraw.

21

The district court granted the motion to withdraw on November 8, 2016, after a hearing that same day. A transcript of this hearing does not appear in the record on appeal. The order issued after the hearing states Goldwyn did not appear at the hearing. The district court held that Goldwyn's counsel was allowed to withdraw from the case because Goldwyn had been requested to comply with her material obligations owed to her counsel and that she failed to comply.

It appears from the pleadings in the record on appeal that Goldwyn failed to fulfill a material obligation to her counsel. Without a transcript of the November 8 hearing, we certainly cannot find otherwise. Therefore, Goldwyn's counsel was within the scope of permissive withdrawal under KRPC 1.16. The district court did not abuse its discretion in granting this motion to withdraw.

VII.    DID THE DISTRICT COURT ERR IN GRANTING SUMMARY JUDGMENT?

Finally, Goldwyn makes multiple arguments that the district court erred in granting summary judgment in favor of RMS. Specifically, she argues (1) she was denied a reasonable opportunity to present any material that was pertinent to RMS's motion for summary judgment; (2) the district court did not comply with Supreme Court Rule 170 (2017 Kan. S. Sct. R. 212); and (3) the district court erred in holding that she failed to respond to RMS's motion for summary judgment. Each of these three arguments will be addressed in turn.

The standard for reviewing a district court's grant of summary judgment is well known:

> "'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as

a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find that reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.'" *Osterhaus v. Toth*, 291 Kan. 759, 768, 249 P.3d 888 (2011) (quoting *Warner v. Stover*, 283 Kan. 453, 455-56, 153 P.3d 1245 [2007]).

Before addressing Goldwyn's arguments, we note that Goldwyn failed to file a response to RMS's motion for summary judgment. This perhaps explains why Goldwyn only attacks the entry of summary judgment on procedural grounds. She failed to dispute any factual allegation contained in the motion, and "[i]t is well settled that a point not raised before, or presented to, the trial court cannot be raised for the first time on appeal." *Anderson v. Overland Park Credit Union*, 231 Kan. 97, 107, 643 P.2d 120 (1982). Goldwyn's failure to file a timely response to RMS's motion for summary judgment waives any substantive objection to the motion for summary judgment.

A.    *Was Goldwyn denied a reasonable opportunity to present any material that was pertinent to RMS's motion for summary judgment?*

First, Goldwyn argues that she was denied a reasonable opportunity to present any material that was pertinent to RMS's motion for summary judgment. In support, Goldwyn cites to the 21st Judicial District Rule 1.07, which states: "Motions for summary judgment will not be heard until discovery is complete, unless all issues to be considered can be determined as matters of law and unless the issues will not be affected by later discovered facts." She seems to argue that the district court erred in granting summary judgment because discovery was not completed and she was not given an opportunity to

23

complete discovery. In response, RMS argues that Goldwyn had more than three years to complete discovery and did not do so. We agree.

K.S.A. 2016 Supp. 60-212(c) and (d) read:

"(c) *Motion for judgment on the pleadings*. After the pleadings are closed, but early enough not to delay trial, a party may move for judgment on the pleadings.

"(d) *Result of presenting matters outside the pleadings*. If, on a motion under subsection (b)(6) or (c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under K.S.A. 60-256, and amendments thereto. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

Additionally, K.S.A. 2016 Supp. 60-256(e)(2) states:

"*Opposing party's obligation to respond*. When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must, by affidavits or by declarations pursuant to K.S.A. 53-601, and amendments thereto, or as otherwise provided in this section, set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

Goldwyn entered her appearance on October 15, 2013. RMS filed its motion for summary judgment on September 1, 2016. The district court granted RMS's motion for summary judgment on November 9, 2016, more than three years after Goldwyn entered her appearance. During the pendency of the case, Goldwyn did not conduct *any* discovery. She cannot now say that she was not given an opportunity to do so. The pleadings show that there was no genuine issue as to any material fact and that RMS was entitled to judgment as a matter of law. See K.S.A. 2016 Supp. 60-256(e)(2). Goldwyn did not respond, even though she had the opportunity to do so. We also note that

24

Goldwyn had a procedural avenue to contest the granting of summary judgment without discovery having been completed. K.S.A. 2016 Supp. 60-256(f) allows a party opposing summary judgment to submit an affidavit or declaration to the court explaining why "it cannot present facts essential to justify its opposition[.]" Goldwyn never did this.

B.      *Was RMS required to serve a copy of its proposed order of summary judgment on Goldwyn?*

Next, Goldwyn argues that RMS was required to serve her with a copy of its proposed journal entry of summary judgment under Supreme Court Rule 170. She argues that because RMS did not serve her with a proposed order, the district court erred in granting summary judgment in favor of RMS. RMS counters by arguing that Supreme Court Rule 170 does not apply because it was not ordered to prepare a draft of this order by the district court. Rather, RMS asserts that it simply submitted the draft of this order to aid the district court.

Kansas Supreme Court Rule 170(a) and (b) (2017 Kan. S. Ct. R. 216) state:

"(a) **Order; Content**. When the court directs a party to prepare an order, the party must prepare the order in accordance with the court's directions. As used in this rule, 'order' includes a journal entry or other document containing a court ruling.

"(b) **Duties of Party Preparing Order.** *A party directed to prepare an order* must, not later than 14 days after the court's direction, unless the court specifies a different time:
(1) serve on counsel of record and unrepresented parties not in default for failure to appear a copy of:
(A) the proposed order . . . ." (Emphasis added.)

25

As RMS correctly points out, the key language invoking the requirements of Supreme Court Rule 170 is the requirement that a party *who is directed by the district court to prepare an order* after the court has issued its ruling must serve a copy of the proposed order to the opposing party. Here, the record does not reflect that the district court ordered RMS to prepare an order, nor does Goldwyn point to anything in the record to support her contention that the district court did so. In *Lyndon State Bank v. Price*, 33 Kan. App. 2d 629, Syl. ¶ 3, 106 P.3d 511 (2005), our court held: "Supreme Court Rule 170 applies to the preparation of journal entries that memorialize judgments that have already been ordered by the court." Here, the district court had not yet issued its decision regarding summary judgment when RMS submitted its suggested order. Thus, Kansas Supreme Court Rule 170 is inapplicable. Because Goldwyn presents no other claim of irregularity regarding the lack of service of the proposed journal entry, we find there was no error.

C. *Did the district court err in holding Goldwyn failed to respond to RMS's motion for summary judgment?*

Finally, Goldwyn argues the district court erred in holding that she had failed to respond to RMS's motion for summary judgment only one day after allowing her attorney to withdraw from the case. In response, RMS argues that Goldwyn was no stranger to these legal proceedings and she could have easily filed a motion requesting an extension of time.

RMS's motion for summary judgment was filed on September 1, 2016. Goldwyn admitted she received a copy of the motion for summary judgment from her counsel on September 22, 2016. On October 4, 2016, Goldwyn's counsel filed his motion to withdraw. The district court did not rule on the motion for summary judgment until November 9, 2016.

26

Goldwyn makes no argument explaining her failure to obtain new counsel, file a response to the motion for summary judgment, or seek an extension of time to respond to the motion for summary judgment. She had 69 days from the date the motion for summary judgment was filed, 48 days from the date she admitted she received a copy of this motion from her counsel, and 36 days from the date her counsel filed his motion to withdraw to prepare a response or request an extension to respond. In this case, Goldwyn, as a pro se litigant, has filed at least eight extensions of time at different stages of the proceedings. She clearly understands how to request an extension of time but did not request an extension of time to respond to RMS's motion for summary judgment.

Goldwyn's response to RMS's motion for summary judgment appears to have been due September 21, 2016, but she did not meet this deadline. If we were to base Goldwyn's time to respond from the date she admits she received a copy of the motion for summary judgment from her counsel—September 22, 2016—her response would have been due October 13, 2016. She had filed no response by this date either. Goldwyn had ample opportunity to respond to the motion, and the district court did not err in holding she failed to respond. There was no error in the district court's order granting summary judgment in favor of RMS.

Affirmed.